[L.A. No. 32086. Oct. 29, 1987.]

MARIA P., a Minor, etc., et al., Plaintiffs and Respondents, v. WILSON RILES, as Superintendent, etc., et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Charlton G. Holland and Thomas E. Warriner, Assistant Attorneys General, Anne S. Pressman and John H. Sanders, Deputy Attorneys General, for Defendants and Appellants.

Richard M. Pearl, Mary K. Gillespie, Pearl, McNeill & Gillespie, Pearl, McNeill, Gillespie & Standish, Ronald T. Vera, Susan Brown, Stefan M. Rosenzweig and Ralph S. Abascal for Plaintiffs and Respondents.

OPINION

BROUSSARD, J.—In this case, we are asked to determine the propriety of the trial court's award of attorney fees to plaintiffs under Code of Civil Procedure section 1021.5.[1] In particular, we must determine: (1) whether the trial court is divested of jurisdiction to award attorney fees by its dismissal of an action not brought to trial within five years; (2) whether the trial court properly found that plaintiffs were successful litigants who vindicated an important right by obtaining a preliminary injunction protecting public school children from having their immigration status reported to the Immigration and Naturalization Service; and (3) whether the trial court's failure to make findings supporting its calculation of attorney fees requires reversal of the award.

Plaintiffs sought attorney fees as successful litigants under the "private attorney general" doctrine codified in section 1021.5 and the federal Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988).[2] The trial court found that plaintiffs were entitled to reasonable attorney fees for

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[2] In *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 639, footnote 29 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*), we emphasized that section 1021.5 represented an independent state rule for awarding attorney fees to a successful litigant under the private attorney general doctrine. Because we uphold plaintiffs' award under state law in this case, we do not reach the issue of plaintiffs' entitlement to fees under the federal act.

obtaining a preliminary injunction in the underlying action and awarded such fees.

The Court of Appeal reversed, determining that the trial court had no jurisdiction to make the fee award after it had dismissed the underlying action pursuant to former section 583, subdivision (b).[3] In addition, the Court of Appeal held that the plaintiffs were not successful litigants within the meaning of section 1021.5.

We reverse the judgment of the Court of Appeal, and conclude that the trial court had jurisdiction to award attorney fees and properly determined that the plaintiffs were entitled to such fees under section 1021.5. While the trial court should have specified the basis of its award, its failure to do so does not constitute reversible error.

## I. FACTS AND PROCEDURE

In April 1975, plaintiffs Maria P., a seven-year-old child, through her mother as guardian ad litem, and Assemblymen Arthur Torres and Richard Alatorre, as state taxpayers, filed suit against defendants Wilson Riles, then State Superintendent of Public Instruction, El Centro Elementary School District, and its board of trustees. They sought a preliminary injunction to prevent the school district from denying Maria P. admission to school because of her noncitizen immigration status; to prevent the district from reporting the child's immigration status to the board of supervisors, and ultimately to the Immigration and Naturalization Service (I.N.S.), as required at that time by Education Code section 6957; and to prevent the State Superintendent of Public Instruction (hereafter superintendent) from implementing Education Code section 6957 in the state.[4]

El Centro School District moved to dismiss the complaint. It claimed that Maria P. had been admitted to district schools and that it had never

---

[3] Former section 583, subdivision (b) provided, in pertinent part, that a court shall dismiss any action "unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended." The substance of subdivision (b) is continued in sections 583.310, 583.330 and 583.360, but for convenience of reference, section 583, subdivision (b) will be used throughout the opinion.

[4] Former Education Code section 6957 provided: "The State Superintendent of Public Instruction may furnish the forms and shall prescribe the procedures required of school districts and county superintendents of schools under this chapter, and shall adopt all rules and regulations necessary for carrying out its provisions.

"Such rules and regulations shall require the county superintendent of schools to list the nonimmigrant children and noncitizen children without immigration status by name and address and submit such list to the board of supervisors. The board of supervisors shall forward a copy of such list to the appropriate regional office of the United States Immigration and Naturalization Service."

reported the identities of noncitizen children without immigrant status to federal or state authorities. However, the district admitted that it would comply with state requirements if the state mandated such reporting under Education Code section 6957. Concurrently, the superintendent demurred, claiming that plaintiffs failed to allege the existence of any state policy excluding noncitizen children without immigrant status from public schools or reporting them to immigration officials. The trial court denied the defendants' motions.

The defendants then filed answers, and the superintendent filed a memorandum opposing the issuance of a preliminary injunction. The superintendent argued that he was not an appropriate defendant since plaintiffs had not alleged that he had personally or in concert with any school district denied admittance of any noncitizen child to public schools, nor that he had approved of refusing such admittance. He further argued that Education Code section 6957 did not violate federal law.

On September 16, 1975, the trial court issued the preliminary injunction sought by plaintiffs. The court ruled that Education Code section 6957 conflicted with the federal Family Educational Rights and Privacy Act of 1974 (20 U.S.C. § 1232g), and was therefore void under the supremacy clause of the United States Constitution. The court found that Maria P. was subject to having her identity and immigration status disclosed by defendants to the I.N.S., and that she was likely to suffer irreparable injury as a result. Accordingly, the court ordered the superintendent (1) not to issue any regulations under Education Code section 6957, and (2) to instruct every state school district not to disclose the identities of noncitizen resident children without immigration status to federal authorities. The trial court also enjoined El Centro School District from disclosing the information required by Education Code section 6957.[5]

The superintendent subsequently issued a memorandum to inform all state school districts about the preliminary injunction. However, he advised the districts to determine for themselves if the court's decision affected their "obligation to follow section 6957 as currently written." Following several media reports indicating that local school districts continued to disclose information to the I.N.S., a further hearing was held in September 1976 to assess whether the superintendent had complied with the injunction's terms. After the hearing, the court directed the superintendent to issue a new memorandum requiring the local districts to comply with the court's order.

---

[5] Before issuance of the preliminary injunction, plaintiffs withdrew their allegations that El Centro School District had wrongfully excluded Maria P. and similarly situated children from its schools.

When the superintendent did so, plaintiffs took no further action at the trial court level.

Education Code section 6957 was relabeled section 42911 under the reorganization of the Education Code, effective April 30, 1977. The Legislature then amended Education Code section 42911 in 1977 to delete all reporting requirements. (Stats. 1977, ch. 1173, § 12, operative July 1, 1978.) As a result, plaintiffs took no further action until September 1980 when defendants moved to dismiss the action for failure to bring it to trial within five years of its filing. (§ 583, subd. (b).) The trial court granted the motion to dismiss.

After the order dismissing the action, plaintiffs moved for attorney fees pursuant to section 1021.5. The court found that the case became moot by the legislative amendment of Education Code section 6957, and that plaintiffs failed to establish that their action had caused the amendment. Therefore, the court declined to award fees for work done after the issuance of the preliminary injunction. However, it found that plaintiffs should recover reasonable attorney fees for obtaining the preliminary injunction against the state defendant because the injunction substantially benefited the public, and the financial burden of enforcement could not be borne by the benefited class. Thus, the trial court awarded $40,000 in fees against the state defendant only.

The Court of Appeal reversed the trial court's fee award. It found that the dismissal pursuant to section 583 divested the trial court of jurisdiction to award fees. Furthermore, it held that plaintiffs were not successful litigants under section 1021.5 because they had failed to establish that their suit "served as a catalyst for change or served to vindicate any important right." Plaintiffs sought review in this court.

## II.  AWARD OF FEES AFTER DISMISSAL

The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) Under this section, the court may award attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." ■ As we explained in *Woodland*

*Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at page 933, the private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases. (*Ibid.*)

■ A statutory fee motion under section 1021.5 does not create a new cause of action. Instead, the motion is "a collateral matter, ancillary to the main cause." (*Serrano IV, supra,* 32 Cal.3d at p. 637.) Before a trial court may award fees, section 1021.5 requires that an action result in the enforcement of an important right and confer a substantial benefit on the public. Given these statutory requirements, we have stated that section 1021.5 motions may not be heard "until the benefit is secure, in some cases after judgment is final." (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 679 [186 Cal.Rptr. 589, 652 P.2d 437]; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 226-227 [226 Cal.Rptr. 265].) Thus, the trial court retains jurisdiction under section 1021.5 to hear an application for fees after the judgment in the underlying action has become final. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 679; *Citizens Against Rent Control* v. *City of Berkeley, supra,* 181 Cal.App.3d at pp. 226-227; *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 834-835 [160 Cal.Rptr. 465]; see also *White* v. *New Hampshire Dept. of Empl. Sec.* (1982) 455 U.S. 445, 451-452 [71 L.Ed.2d 325, 331, 102 S.Ct. 1162] [court's decision on attorney fees under 42 U.S.C. § 1988 requires inquiry separate from decision on the merits, which inquiry "cannot even commence until one party has 'prevailed'"].)

■ Defendants acknowledge these general principles but argue that they are not applicable here. Defendants point out that dismissal of an action not brought to trial within five years is mandatory under section 583, subdivision (b). Thus, they argue, the statute is jurisdictional and divests the court of authority to issue further orders. (See, e.g., *White* v. *Renck* (1980) 108 Cal.App.3d 835, 840-841 [71 L.Ed.2d 325, 102 S.Ct. 1162]; *McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 530-531 [105 Cal.Rptr. 330, 503 P.2d 1338]; *Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 805 [69 Cal.Rptr. 305, 442 P.2d 361], revd. on other grounds (1986) 42 Cal.3d 342 [228 Cal.Rptr. 504, 721 P.2d 590].) Moreover, they claim that upon dismissal, there is no judgment, settlement, or consent decree in plaintiffs' favor to which an attorney fees application could be deemed collateral or ancillary.

Simply labeling a section 583 dismissal as "jurisdictional" does not end our inquiry about statutory attorney fees. ■ Under the federal Constitution, a dismissal for mootness deprives a federal court of jurisdiction to hear the underlying cause. (U.S. Const., art. III, § 2.) Nevertheless, the federal court still retains jurisdiction to address the issue of attorney fees for a prevailing party under 42 United States Code section 1988. (*Martin* v. *Heckler* (11th Cir. 1985) 773 F.2d 1145, 1148-1149 (en banc); *Williams* v. *Alioto* (9th Cir. 1980) 625 F.2d 845, 847-848, cert. den. (1981) 450 U.S. 1012 [68 L.Ed.2d 213, 101 S.Ct. 1723]; *Bagby* v. *Beal* (3d Cir. 1979) 606 F.2d 411, 413-415.) Since both this court and the Legislature have relied on federal cases in framing the private attorney general theory, we regard the federal precedent in this area as persuasive. (*Serrano IV, supra,* 32 Cal.3d at p. 634; *Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at p. 934.)

■ Contrary to defendants' claim, a dismissal for lack of prosecution under section 583 does result in a judgment. (§ 581d.) Moreover, a section 583 dismissal does not divest the trial court of jurisdiction to consider matters ancillary to the underlying action such as an application for attorney fees under section 1021.5. (*No Oil, Inc.* v. *City of Los Angeles* (1984) 153 Cal.App.3d 998, 1006 [200 Cal.Rptr. 768]; cf. *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at pp. 677-679 [court retains jurisdiction after the filing of compromise agreement to consider costs bill and § 1021.5 attorney fee motion].)

We conclude that dismissal under section 583, subdivision (b) does not divest the trial court of jurisdiction to award attorney fees under section 1021.5.

### III. SUCCESSFUL LITIGANTS UNDER SECTION 1021.5

■ The Court of Appeal held that plaintiffs were not successful parties under section 1021.5. The court dismissed plaintiffs' success in obtaining the preliminary injunction as "transitory and a token victory at best." The court reasoned that there was no causal connection between plaintiffs' litigation and the practical result, finding no evidence in the record to indicate that plaintiffs' lawsuit served as a catalyst for change or served to vindicate any important right. In essence, the court concluded that the preliminary injunction did not change defendants' conduct because defendants had never implemented or enforced Education Code section 6957 before plaintiffs' lawsuit. Moreover, the court believed that the Legislature's repeal of the statute, not the preliminary injunction, enabled plaintiffs to achieve their objective.

The Court of Appeal's reasoning is flawed. ■ Our prior cases uniformly explain that an attorney fee award may be justified even when

plaintiff's legal action does not result in a favorable final judgment. (*West-side Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352 [188 Cal.Rptr. 873, 657 P.2d 365]; see also *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311 [193 Cal.Rptr. 900, 667 P.2d 704] [although their action had become moot, plaintiffs were awarded fees under § 1021.5 because they had achieved the relief they sought through preliminary injunction].) It is also clear that the procedural device by which a plaintiff seeks to enforce an important right is not determinative of his or her entitlement to attorney fees under section 1021.5. (*In re Head* (1986) 42 Cal.3d 223, 228-229 [228 Cal.Rptr. 184, 721 P.2d 65].) Similarly, a section 1021.5 award is not necessarily barred merely because the plaintiff won the case on a preliminary issue. (*Woodland Hills Resident Assn., Inc., supra,* 23 Cal.3d at p. 938.) In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." (*Folsom, supra,* 32 Cal.3d at p. 685.)

The trial court in its discretion "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award" under section 1021.5. (*Woodland Hills Residents Assn., supra,* 23 Cal.3d at p. 938.) ■ The trial court's decision on this issue should be reversed only if there has been a prejudicial abuse of discretion. " ' "To be entitled to relief on appeal . . . it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . ." ' " (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874], citation omitted.)

■ Plaintiffs obtained an injunction to stop enforcement of Education Code section 6957 statewide for almost three years. The trial court specifically found that "plaintiffs conferred a substantial benefit upon a large class of persons and the public at large by obtaining a preliminary injunction." Even though the Legislature's subsequent amendment of Education Code section 6957 mooted plaintiffs' case, we cannot agree that plaintiffs achieved only a token victory by obtaining an injunction.

■ As the Court of Appeal stated, there must be a causal connection between the plaintiffs' lawsuit and the relief obtained in order to justify a fee award under section 1021.5 to a successful party. (*Westside Community for Independent Living, Inc., supra,* 33 Cal.3d at p. 353.) " 'The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two.' " (*Folsom, supra,* 32 Cal.3d at p. 685, fn. 31, citation omitted.) An award of attorney fees under section 1021.5 is appropriate when a plaintiff's

lawsuit " 'was a *catalyst* motivating defendants to provide the primary relief sought,' " or when plaintiff vindicates an important right " 'by activating defendants to modify their behavior.' " (*Westside Community for Independent Living, Inc., supra,* 33 Cal.3d at p. 353, original italics, citations omitted; see also *Folsom, supra,* 32 Cal.3d at pp. 685-686 [plaintiffs regarded as prevailing parties when their lawsuit "substantially contributed" to the result achieved].) In a similar situation involving 42 United States Code section 1988, the United States Supreme Court expressed the appropriate standard as follows: " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (*Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50, 103 S.Ct. 1933], citation omitted.)

■ Plaintiffs' litigation aim was two-fold: (1) to prevent El Centro School District from reporting Maria P. and similarly situated children to federal authorities, and (2) to halt enforcement of Education Code section 6957 on a statewide basis by enjoining the superintendent's implementation of the statute. With the issuance of the trial court's injunction, plaintiffs clearly obtained the relief they sought.

In reversing the trial court's fee award, the Court of Appeal concluded that the preliminary injunction did not change defendant's behavior because neither state nor local defendants had previously implemented or enforced Education Code section 6957. We find this conclusion unwarranted. ■ First, plaintiffs are not required to wait until they have suffered actual harm before they apply for an injunction, but may seek injunctive relief against the threatened infringement of their rights. (See, e.g., *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277 [219 Cal.Rptr. 467, 707 P.2d 840] [plaintiffs' action for declaratory and injunctive relief filed before enforcement date of city ordinance]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 678, fn. 2 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *EWAP, Inc.* v. *City of Ontario* (1986) 177 Cal.App.3d 1108, 1116-1117 [223 Cal.Rptr. 422].) ■ Second, an examination of the record reveals ample support for the trial court's finding of threatened harm to plaintiffs.

In issuing its preliminary injunction, the trial court found that Maria P. was subject to having her identity and status disclosed to the I.N.S. and was likely to suffer irreparable harm as a result. Even though it had not previously enforced Education Code section 6957, El Centro School District admitted in court proceedings that they would report Maria's name to the I.N.S. if the state instructed them to do so. Furthermore, the superintendent sought to modify the preliminary injunction issued, asserting that he had no authority to prevent local districts from enforcing a valid state statute. In

fact, the superintendent's original letter to local school districts advised them to consult with local county counsel to ascertain whether the court's order applied to them. This letter prompted plaintiffs to return to the trial court after the superintendent refused to issue a new letter without a court order. As a direct result of plaintiffs' action, the court ordered the superintendent to issue a second memorandum, mandating the local districts' compliance with the court's original preliminary injunction order.

This second letter indicates the change in the state's posture as a result of plaintiffs' lawsuit. In the letter, the superintendent conceded that the trial court was correct in its interpretation of the federal Family Educational Rights and Privacy Act. Given these circumstances, it is apparent that plaintiffs' lawsuit substantially contributed to the result achieved.

We conclude that the record supports the trial court's decision that plaintiffs were successful parties under section 1021.5. Plaintiffs' action vindicated an important right affecting the public interest by protecting the confidentiality of the school records of Maria P. and other similarly situated children as mandated by federal law. Their action also served to protect these children's right to equal educational opportunities, a vitally important right in our society. (See, e.g., *Serrano* v. *Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929]; *Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 907-908 [201 Cal.Rptr. 601, 679 P.2d 35]; cf. *Plyler* v. *Doe* (1982) 457 U.S. 202 [72 L.Ed.2d 786, 102 S.Ct. 2382].) This is precisely the type of public interest lawsuit that the private attorney general doctrine of section 1021.5 was intended to foster.

## IV. CALCULATION OF THE FEE AWARD

Next, we must consider whether the trial court erred in calculating the amount of attorney fees. Defendants contend that the trial court's fee award should be reversed because (1) the court failed to issue a statement of decision pursuant to section 632, and (2) the court did not make findings regarding the "lodestar" or "touchstone" figure for attorney fees based on the time spent and reasonable hourly compensation for each attorney. Without a statement of decision or findings, defendants claim that they are hampered in attacking the court's award.

Before the section 1021.5 hearing in this action, defendants requested that the trial court issue a written statement of decision pursuant to section 632 explaining the factual and legal basis for its decision regarding attorney

fees.[6] The court's order granting the motion for attorney fees contains certain findings,[7] but does not contain findings on the factual issues of attorneys' hours or rates.

Cases decided under section 632 generally have held that a statement of decision is not required upon decision of a motion. (See, *Lavine* v. *Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1026 [215 Cal.Rptr. 708]; *In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836 [123 Cal.Rptr. 213] [findings of fact are only required on issues joined by the pleadings where the decision of the court following the findings is a judgment]; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 371, pp. 377-378.) Courts have created an exception for proceedings involving custody of children (*Michael U.* v. *Jamie B.* (1985) 39 Cal.3d 787, 792 [218 Cal.Rptr. 39, 705 P.2d 362]; *In re Rose G.* (1976) 57 Cal.App.3d 406, 418 [129 Cal.Rptr. 338]). However, we have discovered no case requiring a statement of decision for an order on a motion for attorney fees.

■ In *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 48-49 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*), we promulgated guidelines by which courts calculate the amount of attorney fees under section 1021.5. These guidelines require the trial court first to determine a touchstone (or lodestar) figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. (*Id.,* at p. 48.) The touchstone figure may be increased or decreased by the trial court depending on other factors involved in the lawsuit.[8]

---

[6] Section 632 provides, in relevant part: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial."

[7] The trial court found that "plaintiffs conferred a substantial benefit upon a large class of persons and the public at large by obtaining a preliminary injunction herein; that the financial burden of private enforcement of the rights vindicated by plaintiff cannot feasibly be borne by the class benefitted [*sic*]; that after the issuance of the preliminary injunction this case became moot and was ultimately dismissed on motion of defendants; and that plaintiffs are entitled to recover reasonable attorney's fees for obtaining the preliminary injunction from the State defendant." The court further found that "plaintiffs did not establish a 'causal relationship' between the instant action and the legislative amendment of former Education Code section 6957 (renumbered section 42911); and [ ] that plaintiffs are entitled to an award of reasonable attorney's fees in the amount of $40,000.00."

[8] In *Serrano III,* this court listed a number of relevant factors the trial court may consider in adjusting the lodestar figure, including: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ulti-

The "lodestar adjustment method of calculating attorney fees set forth in *Serrano III* is designed expressly for the purposes of maintaining objectivity." (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 324.) The trial judge ultimately has discretion to determine the value of the attorney services. "However, since determination of the lodestar figure is so '[f]undamental' to calculating the amount of the award, the exercise of that discretion must be based on the lodestar adjustment method." (*Id.* at p. 322, citations omitted.)

Prior to the attorney fees hearing in this action both parties alerted the trial court to the factors that should be considered in awarding such fees. Plaintiffs submitted a lodestar figure of $45,171 and requested that it be multiplied by a factor of 1.5 to reflect the novelty and difficulty of the legal issues, their skill in presenting these issues and the contingent nature of recovery. Accordingly, plaintiffs claimed a total fee of $67,757, for legal services leading up to the preliminary injunction and its enforcement. Plaintiffs supported their claim with affidavits from each attorney explaining the hourly rate claimed, the prevailing market rate for legal services in the community, the number of hours spent, and the tasks involved. Defendants submitted a memorandum of points and authorities relying on *Serrano III* factors to oppose plaintiff's claim.

The trial court awarded $40,000 to plaintiffs as "reasonable attorney's fees," amounting to an 11 percent reduction of their lodestar amount and a 41 percent reduction of their total claim. The court's failure to specify in its written order the basis of its calculation of the award, and the absence in the appellate record of a transcript of the fee hearing or a settled statement of that proceeding (Cal. Rules of Court, rule 4(e)) make it impossible for us to determine whether the trial court based its award on the lodestar adjustment method.

We find it unnecessary, however, to remand this case to redetermine attorney fees. It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error. (*In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65]; *Calhoun* v. *Hildebrandt* (1964) 230 Cal. App.2d 70, 72 [40 Cal.Rptr. 690]; *In re Salazar* (1962) 205 Cal.App.2d 102, 105 [22 Cal.Rptr. 770].) Here, defendants should have augmented the record with a settled statement of the proceeding. (Cal. Rules of Court, rule 4(e); *In re Kathy P., supra,* 25 Cal.3d at p. 102; *Ehman* v. *Moore* (1963) 221 Cal.App.2d 460 [34 Cal.Rptr. 540].) Because they

---

mately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed . . . ." (20 Cal.3d at p. 49.)

failed to furnish an adequate record of the attorney fee proceedings, defendants' claim must be resolved against them.

Accordingly, the judgment of the Court of Appeal is reversed with directions to affirm the trial court's judgment. Moreover, plaintiffs are to be awarded attorney fees for their attorneys' time spent defending their award in this appeal. (*Serrano IV, supra,* 32 Cal.3d at p. 639.)

Lucas, C. J., Mosk, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.