361 F.3d 566
 CHURCHILL VILLAGE, L.L.C., Barbara Dorsett, and Al Dorsett individually and on behalf of the general public; Barbara Dorsett; Al Dorsett; Seymour Lazar; Joan Chalmers; Judith Saporta, Plaintiffs,
Harriet Skurman; Norman Hickman; Phyllis Hickman; Craig Rosenfield, Intervenors,
v.
GENERAL ELECTRIC, Individual Consumer Dishwasher Litigation, Defendant-Appellee,
v.
Beckwith Place Limited Partnership; Susan E. Glatter Kamman, individually and on behalf of others similarly situated, Plaintiff-Intervenors-Appellants.
Churchill Village, L.L.C., Barbara Dorsett, and Al Dorsett individually and on behalf of the general public; Barbara Dorsett; Al Dorsett; Seymour Lazar; Joan Chalmers; Judith Saporta, Plaintiffs-Appellees,
Joseph Cooper; Nina Kasprzak, Appellants, and
Harriet Skurman; Norman Hickman; Phyllis Hickman; Craig Rosenfield, Intervenors,
v.
General Electric, Individual Consumer Dishwasher Litigation, Defendant-Appellee,
v.
Beckwith Place Limited Partnership, Plaintiff-Intervenor, and
Susan E. Glatter Kamman, individually and on behalf of others similarly situated, Plaintiff-Intervenor-Appellant.
In re General Electric, Individual Consumer Dishwasher Litigation, Churchill Village, L.L.C., Barbara Dorsett; Al Dorsett; Seymour Lazar; Joan Chalmers; Judith Saporta, Plaintiffs-Appellees,
Harriet Skurman; Norman Hickman; Phyllis Hickman; Craig Rosenfield, Intervenors-Appellants,
v.
General Electric Company, a New York corporation, Defendant-Appellee.
Churchill Village, L.L.C., Barbara Dorsett, and Al Dorsett individually and on behalf of the general public, Plaintiff, and
James Hoyer Newcomer & Smiljanich, P.A.; Levin Tannenbaum Wolff; Cauley Geller Bowman & Coates, LLP, Appellants,
v.
General Electric, a New York corporation, Defendant-Appellee.
Churchill Village, L.L.C., Barbara Dorsett, and Al Dorsett individually and on behalf of the general public; Barbara Dorsett; Al Dorsett; Seymour Lazar; Joan Chalmers; Judith Saporta, Plaintiffs, and
James Hoyer Newcomer & Smiljanich, P.A.; Levin Tannenbaum Wolff; Cauley Geller Bowman & Coates, LLP, Claimants-Appellees,
v.
General Electric, a New York corporation, Defendant-Appellant.
 No. 01-17059.
 No. 02-15354.
 No. 02-15391.
 No. 02-16838.
 No. 02-16906.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 8, 2003.
 Filed March 16, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, and Lester L. Levy, Wolf Popper, L.L.P., New York, NY, argued the cause for the applicants in intervention-appellants and filed briefs. Thomas M. Wardrop, Wardrop & Wardrop, P.C., Grand Rapids, Michigan; Beverly C. Moore, Jr., Moore & Brown, Washington, DC; and Douglas G. Thompson, Finkelstein, Thompson & Loughran, Washington, DC, were on the briefs.
 George Donaldson, Law Offices of George Donaldson, San Francisco, CA, argued the cause and, with Daniel B. Harris and Ariana Farzanrad, filed briefs for the plaintiffs-appellees-cross-appellees. Joseph J. Tabacco, Jr., and Christopher T. Heffelfinger, Berman Devalerio Pease Tabacco Burt & Pucillo, P.C., San Francisco, CA; and Dennis Stewart and Susan G. Taylor, Milberg Weiss Bershad Hynes and Lerach L.L.P., San Diego, CA, were on the briefs.
 Hal Bogard, General Electric Co., Louisville, KY, argued the cause for the defendant-appellee-cross-appellant and filed briefs. Timothy P. Crudo and James L. Day, Latham & Watkins, San Francisco, California; and Peter L. Winik and Beth A. Wilkinson, Latham & Watkins, Washington, DC, were on the briefs.
 John A. Yanchunis, James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, argued the cause and, with Mike Peacock, filed briefs for the appellants-cross-appellees.
 Appeal from the United States District Court for the Northern District of California; Marilyn H. Patel, District Judge, Presiding. D.C. No. CV-99-05073-MHP.
 Before: SCHROEDER, Chief Judge, O'SCANNLAIN, and TASHIMA, Circuit Judges.
 OPINION
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide various challenges to a class-action settlement of these suits against the manufacturer of consumer dishwashers.
 
 
 2
 * A
 
 
 3
 Between 1983 and 1989, General Electric ("GE") manufactured and sold approximately three million GE- and Hotpoint-brand dishwashers equipped with a sliding "energy saver" switch. Although some were sold to individual consumers, the dishwashers were considered "low end" products and were primarily marketed to contractors, builders, and owners of commercial or rental properties. The switch, which allows a user to select either a heated drying cycle or drip drying, deteriorates over time and may melt or ignite.
 
 
 4
 Reports of fires caused by the allegedly defective switch eventually prompted an investigation by the Consumer Product Safety Commission ("CPSC"). Although the investigation found that no consumers had been physically injured, it determined that approximately 50 fires could be attributed to the switch, three of which damaged property other than the dishwasher itself. Under the terms of a formal settlement agreement between GE and the CPSC, GE announced a "recall" of the dishwashers in October 1999. GE advised consumers to stop using the dishwashers immediately, and offered a choice between a $75-125 cash rebate toward the purchase of a GE-brand dishwasher or a $25 cash refund toward the purchase of a non-GE-brand dishwasher, along with a free one-year service agreement with GE. GE also agreed to replace dishwashers still under extended service agreements. The GE-CSPC agreement also permitted GE to reach a separate agreement with owners and operators of commercial and residential properties that could include discounted bulk pricing and instructions to repair the switch by rewiring. Dissatisfied with the rebate program, some consumers turned to the courts.
 
 B
 
 5
 The first of the two underlying actions consolidated in this appeal was filed in November 1999. Churchill Village, L.L.C. ("Churchill"), an Oregon corporation and owner of an apartment building in Eugene, Oregon, sued GE both individually and on behalf of the general public in the Northern District of California, asserting claims under California's unfair competition and false advertising laws and seeking injunctive relief and restitution. Churchill asserted federal jurisdiction against GE (a New York corporation headquartered in Connecticut) based on diversity of citizenship, contending that injunctive relief as measured by the cost to the defendant exceeded the $75,000 amount-in-controversy requirement. See 28 U.S.C. § 1332. Jurisdiction over the state-law claims was asserted on the principles of supplemental jurisdiction in 28 U.S.C. § 1367. The complaint was later amended to add two individual plaintiffs, Al and Barbara Dorsett, citizens of California. Churchill and the Dorsetts then sought a preliminary injunction, which the district court denied on May 10, 2000. Churchill Village, L.L.C. v. Gen. Elec. Co., 169 F.Supp.2d 1119 (N.D.Cal.2000).
 
 
 6
 Also in May 2000, Seymour Lazar, a California citizen, sued GE in the Northern District of California on behalf of himself, the general public, and a putative class of consumer owners. Lazar v. General Electric Co., No. C 00-1621. In addition to violations of California's unfair competition and false advertising laws, the complaint alleged counts of common-law fraud and violations of federal law. Federal jurisdiction was thus asserted on the existence of a federal question under 28 U.S.C. § 1331, with supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.
 
 
 7
 Contemporaneously with the Churchill and Lazar suits in California, Beckwith Place Limited Partnership ("Beckwith"), a Michigan property owner, sued GE in Illinois state court in December 1999, seeking to represent a nationwide class of consumer-owners. Other consumers filed class actions in Connecticut state court in March 2000.
 
 
 8
 Still other consumers sued GE in both state and federal court in Florida in December 1999 and February 2000 respectively. The Florida plaintiffs were represented by James, Hoyer, Newcomer & Smiljanich, P.A.; Levin, Tannenbaum, Wolff; and Cauley, Geller, Bowman & Coates, L.L.P. (collectively "Florida Counsel"), who allege entitlement to attorneys' fees in this litigation.
 
 
 9
 Finally, the New York Attorney General brought suit in New York state court in March 2000, challenging GE's initial dishwasher recall as deceptive. The action resulted in an award of restitution for New York consumers who purchased new dishwashers in reliance on GE's statements that repair of the recalled dishwashers was impracticable. New York consumers were therefore excluded from the nationwide class approved by the district court.
 
 C
 
 10
 Following pre-trial motions and discovery, the Churchill plaintiffs reached a settlement agreement with GE. Churchill agreed to file (and did so on August 1, 2001) a consolidated amended complaint seeking certification of a class under Fed. R.Civ.P. 23(b)(3).[1] Under the terms of the settlement agreement, GE agreed to provide each class member with either a $20 cash rebate or a one-year service contract.
 
 
 11
 After Churchill moved the district court for preliminary approval of the proposed settlement, Beckwith — here representing the two sets of plaintiffs pursuing class actions against GE in state court in Illinois and Connecticut — moved to intervene to object. The Beckwith objectors were permitted to present their objections to the proposed settlement in writing and participated in the preliminary approval and fairness hearings. The district court denied the intervention motion and preliminarily approved the proposed settlement.
 
 
 12
 On January 22, 2002, the district court issued a final order approving the settlement, dismissing with prejudice all claims by members of the settlement class, awarding fees to Churchill's counsel, and denying fees to Florida Counsel. The Beckwith objectors now appeal the district court's approval of the settlement and Florida Counsel appeal the denial of attorneys' fees, claiming that they were responsible for catalyzing Churchill's successful result. Recognizing that Florida Counsel's claim shared a common progenitor with Churchill's settlement, we consolidated these appeals.
 
 II
 
 13
 As a threshold matter, Churchill disputes whether the Beckwith objectors have any right to appeal. Churchill points out that the district court certified the settlement class under Fed.R.Civ.P. 23(b)(3), thereby permitting objecting class members like Beckwith to exclude themselves from the settlement. Because the objectors can opt out, Churchill contends that they suffer no injury and thus lack standing to appeal.
 
 
 14
 But the issue is not precisely one of standing. As the Supreme Court has noted, neither Article III nor prudential standing is implicated by the efforts of non-intervening objectors to appeal class-action settlements. See Devlin v. Scardelletti, 536 U.S. 1, 7, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). Instead, the inquiry is best characterized as concerning the definition of a "party" for purposes of appeal. Id. And the Devlin Court made clear that objectors should be considered parties, holding that "non-named class members... who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." Id. at 14, 122 S.Ct. 2005.
 
 
 15
 Churchill urges that we read Devlin narrowly. There, the Court relied on the fact that Devlin was unable to opt out of the Rule 23(b)(1) class. Here, by contrast, the Beckwith objectors may exclude themselves from the settlement and thus preserve their right to seek relief from GE. Yet this ostensible independence is belied by an essential impracticability. Because each objector's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief. By terminating all class actions relating to the dishwasher recall, the settlement will effectively bind the objectors. They therefore occupy precisely the status the Devlin Court sought to protect. See id. at 10, 122 S.Ct. 2005 ("What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing.").
 
 
 16
 We are satisfied that Devlin applies here sufficiently to permit the Beckwith objectors to challenge the settlement approved by the district court. Such a reading of Devlin is consistent, moreover, with our longstanding pre-Devlin practice of permitting objecting class members to appeal settlements. See Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1176 (9th Cir.1977) (allowing class members who had not opted out to appeal settlement); Dosier v. Miami Valley Broad. Corp., 656 F.2d 1295, 1299 (9th Cir.1981) (noting that unnamed class member who was represented by counsel at settlement conference "could have challenged it by direct appeal"); In re Cement Antitrust Litig., 688 F.2d 1297, 1309 (9th Cir.1982) ("[A] class member may appeal from an order approving a settlement to which the member objects[.]"); see also 5 Moore's Federal Practice § 23.86[2] (3d ed.1997) (arguing for a broad reading of Devlin).
 
 
 17
 Because we conclude that Beckwith may appeal the approval of the settlement, we now turn to the merits.
 
 III
 
 18
 Beckwith first contends that the district court lacked subject-matter jurisdiction. Churchill counters that either federal question (28 U.S.C. § 1331) or diversity (28 U.S.C. § 1332) jurisdiction prevailed.
 
 
 19
 * Was there federal question jurisdiction? Both the May 2000 Lazar complaint and the consolidated complaint alleged that GE's operation of the dishwasher recall program violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Both complaints named GE as the RICO "person" under 18 U.S.C. § 1961(3) and the recall program as the RICO "enterprise" under § 1961(4). Both alleged that GE committed numerous violations of federal mail and wire fraud statutes as it engaged in a pattern of racketeering activity relating to the recall program. In telephone calls and correspondence, according to the complaints, GE misled the CPSC about the defective nature of the dishwashers. The complaints also alleged that GE deceived affected customers by downplaying the seriousness of the dishwashers' defects; attempting to reduce GE's costs to remedy the defects; and 3295 fraudulently inducing customers to purchase other GE products.
 
 
 20
 More specifically, the complaints alleged that GE violated 18 U.S.C. § 1962(a) by using income derived from its pattern of racketeering activity to establish or operate the recall program.[2] The complaints further alleged that GE violated § 1962(b) when it used its pattern of racketeering activity to acquire or to maintain an interest in or control of the recall program; and violated § 1962(c) by conducting the recall program through a pattern of racketeering activity.[3] The complaints added a conspiracy count under § 1962(d).[4] Churchill now contends that these recitals are enough to confer federal question jurisdiction under 28 U.S.C. § 1331.[5]
 
 
 21
 Beckwith's succinct response is that the RICO claims are wholly without merit and incapable of supporting federal jurisdiction. Pointing to our decision in Rae v. Union Bank, 725 F.2d 478 (9th Cir.1984), they argue that it is well-established that § 1962(c) requires that the "person" and "enterprise" be distinct, and that GE and the recall program are here insufficiently distinct to trigger RICO liability. Beckwith contends that the RICO claims are "terminally flawed," and thus the district court should not have entertained the action.
 
 B
 
 22
 Let us remember that the standard for establishing federal jurisdiction is even less stringent than that required to state a claim under Fed.R.Civ.P. 12(b)(6). As we have explained, "Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." Bollard v. Calif. Province of the Soc'y of Jesus, 196 F.3d 940, 951 (9th Cir.1999); see also Cement Masons Health and Welfare Trust Fund for N. Calif. v. Stone, 197 F.3d 1003, 1008 (9th Cir.1999).
 
 
 23
 Although the claim under § 1962(c) indeed appears entirely foreclosed by our decision in Rae, we need not evaluate the merits or probability of success of that claim, for Churchill has pleaded sufficiently non-frivolous claims under § 1962(a) and (b). We have not required that the RICO "person" and "enterprise" be distinct in actions under these subsections. See Wilcox v. First Interstate Bank of Ore., N.A., 815 F.2d 522, 529 (9th Cir. 1987); see also Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1398 (9th Cir.1986) ("[W]here a corporation engages in racketeering activities and is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the `person' and the `enterprise' under section 1962(a)."). Churchill sufficiently alleged that income derived indirectly from acts of mail and wire fraud forming a pattern of racketeering activity was used in the establishment and operation of the injurious recall "enterprise," as required by § 1962(a). See Nugget Hydroelectric, L.P. v. Pac. Gas and Elec. Co., 981 F.2d 429, 437 (9th Cir.1992) (plaintiff under § 1962(a) "must allege facts tending to show that he or she was injured by the use or investment of racketeering income"). And the complaints also alleged that GE maintained control of the recall program through acts of mail and wire fraud comprising a pattern of racketeering, as required by § 1962(b). See Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1111 (9th Cir. 2003) (explaining that, in order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege an injury stemming from defendant's control over a RICO enterprise).
 
 
 24
 We express no opinion regarding the likelihood of success on these claims, noting only that our cases have permitted RICO plaintiffs to amend inadequately pleaded claims to avoid dismissal under the more stringent standard mandated by Fed.R.Civ.P. 12(b)(6). See Kempe v. Monitor Intermediaries, Inc., 785 F.2d 1443, 1444 (9th Cir.1986). But we cannot say that Churchill's claims under subsections (a) and (b) are so untenable in light of their conformity to the plain language of the statute and the absence of a distinctiveness requirement as to prohibit federal jurisdiction under the "non-frivolous assertion" standard announced in Bollard. The district court therefore properly exercised jurisdiction over the settlement.
 
 C
 
 25
 Because we are satisfied that the district court possessed federal question jurisdiction, we need not reach the question of whether it had diversity jurisdiction as well.
 
 IV
 
 26
 Beckwith next contends that the notice of settlement was defective because it failed adequately to inform class members about the status of other litigation arising from the dishwasher recall.[6]
 
 
 27
 Fed.R.Civ.P. 23(c)(2) prescribes the "best notice practicable under the circumstances." Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir.1980). The notice approved by the district court met this standard. Apart from informing class members of the settlement's terms, the notice also listed the names, case numbers, and courts of pending actions in Illinois, Florida, New York, and Connecticut. The district court ordered that this information be included in the notice in response to concerns expressed by the Beckwith objectors at the preliminary approval hearing. Under the circumstances, we are satisfied that the notice approved by the district court provided "absent class members ... with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir.1998).
 
 V
 
 28
 Finally, Beckwith challenges the fairness and adequacy of the settlement approved by the district court. We are required to determine whether the district court abused its discretion in balancing the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Hanlon, 150 F.3d at 1026.[7] In addition, although "strong judicial policy ... favors settlements," see Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.1992), the settlement may not be the product of collusion among the negotiating parties. Id. at 1290.
 
 
 29
 In this case, Churchill presented the district court with a memorandum of points and authorities that referred to the correct standard; the district court examined the memorandum and considered the relevant factors in concluding that the settlement was fair, adequate, and reasonable. Although Beckwith faults the district court for not producing written findings of fact, we have not required a formal written response where the district court "provide[s] a reasoned response elsewhere in the record." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 377 (9th Cir.1995). Here, the record reveals that the district court appropriately considered the relevant factors, which we now analyze in turn:
 
 
 30
 The strength of the plaintiffs' case. The settlement was approved in September 2001, almost two years after litigation commenced. In rejecting Churchill's request for a preliminary injunction, the district court concluded that the plaintiffs were unlikely to succeed on the merits. See Churchill, 169 F.Supp.2d at 1133. Moreover, GE's three summary judgment motions were pending before the court. The court also considered the merits of the case in the preliminary approval and fairness hearings, at which the Beckwith objectors were permitted to present their objections to the proposed settlement; the objectors were also allowed to offer written objections. In sum, the district court more than adequately evaluated the merits and likelihood of success of the settling plaintiffs' case.
 
 
 31
 The risk, expense, complexity, and likely duration of further litigation. In addition to evaluating the strength of the plaintiffs' case, the district court knew that GE believed it had a strong case on the merits, was aware that Churchill's RICO claims were vigorously disputed, and knew that an appeal by the losing party was likely. We therefore conclude that the district court appropriately weighed the risk, expense, complexity, and likelihood of further litigation.
 
 
 32
 The amount of the settlement. The district court exhaustively considered the amount of the settlement at two separate hearings. In addition to reviewing the details of the earlier recall program, the court was fully aware of the more generous restitution formula used in New York — in large measure due to the participation of the Beckwith objectors in the settlement hearings. However, because the recalled dishwashers had depreciated in value through years of use and the class members had already received a rebate from GE as part of the recall program, the Churchill plaintiffs themselves conceded that recovering more than the settlement consideration at trial would be difficult. The district court's assessment of the amount of the settlement was grounded on a thorough consideration of the relevant data, and we conclude that the evidence amply justified the court's determination that the settlement amount was fair.
 
 
 33
 The experience and views of counsel. The district court was well-acquainted with the views of counsel for Churchill, Beckwith, and GE. In addition to the preliminary approval and fairness hearings, the district court considered Churchill's memorandum in support of settlement approval and the Beckwith objectors' two motions to intervene. At the fairness hearing, the court also noted and queried Churchill about correspondence from the Missouri and Kansas attorneys general that raised questions about the settlement's adequacy. In sum, the record shows that the district court approved the settlement with a thorough consideration of not only the views of counsel for the settling plaintiffs and GE, but also the objections of opposing counsel.
 
 
 34
 The reaction of class members to the proposed settlement. The district court was informed that only 45 of the approximately 90,000 notified class members objected to the settlement. And in considering the Beckwith objectors' motions to intervene and arguments against the settlement at the two hearings, the court was obviously made aware of an array of objections to the settlement. Finally, because the class was certified under Fed.R.Civ.P. 23(b)(3), the district court also reviewed the ultimate list of 500 opt-outs prior to issuing the order finalizing the settlement. The record amply demonstrates that the district court weighed the reactions of members of the proposed settlement class.
 
 
 35
 The possibility of collusion. Beckwith contends that the settlement was negotiated in bad faith, specifically claiming that the RICO claims were pleaded in an effort to contrive federal jurisdiction to permit a settlement to go forward. The objectors raised this same allegation of collusion before the district court, which rejected the suggestion of collusion at the settlement approval hearing. Beckwith presents no real evidence of collusion, and we note that the ostensibly collusive RICO claims were first aired in the Lazar complaint in May 2000 — a year before settlement negotiations began. We therefore conclude that the district court's finding was not clearly erroneous. See In re Pac. Enters., 47 F.3d at 377 (district court findings of fact reviewed for clear error).
 
 
 36
 Because the record reveals that the district court considered the relevant factors and provided a reasoned response to settlement objections, we conclude that the district court did not abuse its discretion in approving the settlement.
 
 VI
 
 37
 Florida Counsel contend in their appeal that they were improperly denied attorneys' fees.
 
 
 38
 * In between the filing of Churchill in November 1999 and Lazar in May 2000, Florida Counsel filed two lawsuits of their own. The first, filed in Florida state court on December 3, 1999, and captioned Walley v. General Electric Company, was a putative nationwide class action grounded in state-law claims predicated on strict liability and breach of implied warrant of merchantability torts. The second, filed in the Middle District of Florida in February 2000, and captioned Schoenfisch v. General Electric Company, also was a putative nationwide class action, and alleged claims grounded upon fraud and violations of RICO, the Consumer Products Safety Act and its associated regulations, 15 U.S.C. § 1064 & 16 C.F.R. §§ 1115.10 et seq., Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. ch. 501.201 et seq., and Florida's false advertising statute, Fla. Stat. ch. 817.41.
 
 
 39
 Neither case met with much success. On May 12, 2000, Walley was dismissed on grounds that none of the named plaintiffs had yet suffered damages on account of the allegedly defective switch and that the complaint therefore had failed adequately to ground a tort cause of action. On July 14, 2000, U.S. District Judge Steven Merryday granted GE's motions to dismiss Schoenfisch for failure to conform to Fed. R.Civ.P. 9(b) and to stay discovery until a viable claim could be stated, and gave Florida Counsel 14 days within which to file an amended complaint. Although Florida Counsel timely amended their Schoenfisch complaint, discovery in the case remained stayed[8] and GE's motion to dismiss the amended complaint was pending when GE entered into a preliminary agreement to settle Churchill's action on April 4, 2001. As a result of that movement towards a final national settlement, GE's motion to dismiss the amended Schoenfisch complaint was never adjudicated, and no class was ever certified through the federal litigation filed in Florida.
 
 
 40
 Shortly after the nationwide settlement was approved, California Counsel filed an application for fees and costs both on their own behalf (pursuant to contractual rights provided them in the settlement agreement) and on behalf of Florida Counsel (pursuant to Cal.Civ.Proc.Code § 1021.5, on the theory that their involvement in the litigation had catalyzed the successful settlement[9]). GE vigorously contested the fees requested on behalf of Florida Counsel, and on March 25, 2002, Chief Judge Patel held a fee hearing at which GE, California Counsel, and Florida Counsel entered appearances. On August 8, 2002, Chief Judge Patel issued a final fee order awarding costs and fees to California Counsel and denying Florida Counsel's application for fees.
 
 B
 
 41
 Before we can turn to the merits of Florida Counsel's claim to fees under § 1021.5, we must assure ourselves that they have standing to assert a claim under that provision.[10] In relevant part, and subject to a variety of subsidiary conditions, § 1021.5 allows courts to "award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of a significant right affecting the public interest." Cal.Civ.Proc.Code § 1021.5 (emphasis added). The insurmountable hurdle precluding Florida Counsel's invocation of § 1021.5 is that they neither seek fees on behalf of "a successful party" in the settlement litigation, nor were they themselves "part[ies]" to the litigation within the meaning of § 1021.5.[11] Instead, they bring this suit in their own name and on their own behalf.
 
 
 42
 California's Supreme Court has long observed that § 1021.5 vests no legal interest in attorneys themselves: "[M]onies awarded... inure not to the benefit of the attorneys involved but the [clients] by which they are employed." Press v. Lucky Stores, Inc., 34 Cal.3d 311, 322 n. 12, 193 Cal.Rptr. 900, 667 P.2d 704 (1983) (quoting Serrano v. Priest, 20 Cal.3d 25, 49, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977)).[12] In the same vein, it is well settled that attorneys lack standing to seek fees under its federal analogue, 42 U.S.C. § 1988. See, e.g., Evans v. Jeff D., 475 U.S. 717, 730-31 & n. 19, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); Venegas v. Mitchell, 495 U.S. 82, 88, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); United States ex rel. Virani v. Jerry M. Lewis Truck Parts and Equipment, Inc., 89 F.3d 574, 577 (9th Cir.1996); Willard v. City of Los Angeles, 803 F.2d 526, 527 (9th Cir.1986). California courts have long considered such precedents to be persuasive authority. Tipton-Whittingham v. City of L.A., 316 F.3d 1058, 1062-63 (9th Cir.2003) (noting "what appears to be a tradition of California courts to construe the attorneys' fees provision of California Code of Civil Procedure § 1021.5 in accord with analogous federal statutory provisions"); see also Maria P. v. Riles, 43 Cal.3d 1281, 1290, 240 Cal.Rptr. 872, 743 P.2d 932 (Cal. 1987) ("Since both this court and the Legislature have relied on federal cases in framing the private attorney general theory [encapsulated in § 1021.5], we regard the federal precedent in this area as persuasive.").
 
 
 43
 We see no reason to depart from the settled understandings of both California and federal law, and therefore conclude that Florida Counsel lack standing to pursue an award of fees.[13]
 
 VII
 
 44
 For the foregoing reasons, the judgment of the district court is AFFIRMED in its entirety.
 
 
 
 Notes:
 
 
 [1]
 Asserting federal question and supplemental jurisdiction, the consolidated complaint alleged violations of California's unfair competition and false advertising laws; common-law fraud; and violations of federal law
 
 
 [2]
 Subsection 1962(a) reads in relevant part: "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce...."
 The Lazar complaint specifically cites § 1962(a); the consolidated complaint copies the language of this allegation under subsection (a) but erroneously cites subsection (c).
 
 
 [3]
 Subsection 1962(b) reads in full: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."
 Subsection (c) reads in full: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."
 
 
 [4]
 Subsection (d) reads in full: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."
 
 
 [5]
 The consolidated complaint also alleged that GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, by breaching the dishwashers' implied warranties of fitness and merchantability. But these claims do not appear viable in light of the requirement of 100 named plaintiffs to maintain a federal class action based on the ActSee 15 U.S.C. § 2310(d)(3)(C) (no cognizable claim "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred"). In this appeal, Churchill does not contend that federal jurisdiction over the settlement can be grounded on the Act.
 
 
 [6]
 Beckwith also condemns the notice's reticence on the amount of attorneys' fees to be awarded to counsel for Churchill. The notice stated that attorneys' fees had not yet been awarded and that they would be paid by GE alone. But because the notice was disseminated on September 24, 2001, before fees were required to be requested, class members were accurately apprised of the current status of the attorneys' fees award
 
 
 [7]
 Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omittedSee Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir.1993).
 
 
 [8]
 Pursuant to Judge Merryday's order, Florida Counsel continued to be provided with copies of all documents given to the other parties litigating similar cases
 
 
 [9]
 Indeed, the record indicates that Florida Counsel were responsible for developing the RICO claims which grounded federal jurisdiction over the settlement, having first filed such claims in theirSchoenfisch complaint and subsequently shared them with California Counsel — who appear essentially to have pasted them into both the Lazar and consolidated complaints with, for the most part, only minor stylistic changes (e.g., adding an occasional comma, deleting quotation marks, or changing a few random words) and occasional formatting alterations (e.g., renumbering relevant cross-references, inserting § symbols, and slightly reordering the claim's component paragraphs).
 
 
 [10]
 As the Supreme Court has explained:
 [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations, quotations, and alterations omitted).
 Whether a party has standing to bring suit is a question of law reviewed de novo. See, e.g., Fair Housing of Marin v. Combs, 285 F.3d 899, 902 (9th Cir.2002); Natural Resources Defense Council v. Southwest Marine, 236 F.3d 985, 994 (9th Cir.2000).
 
 
 [11]
 Indeed, it is unclear whether Florida Counsel even represented a party to the settlement. Although the record indicates that Florida Counsel referred two clients to California Counsel for use as class representatives in the consolidatedChurchill complaint, we think it far from certain that such a referral is tantamount to representation of those individuals in the relevant proceedings; such an assertion strikes us as akin to that of a doctor who, having diagnosed and preliminarily treated a patient, sends him to a surgeon across town and later seeks credit for the successful operation that surgeon eventually performed.
 
 
 [12]
 Flannery v. Prentice, 26 Cal.4th 572, 110 Cal.Rptr.2d 809, 28 P.3d 860 (Cal.2001), is not to the contrary. Despite some language suggesting that an analogous state-law attorneys' fees statute might confer standing on an attorney in order to recover fees, that case arose in the context of, and was limited to, an attorney-client dispute over fee ownership. The California Supreme Court carefully emphasized that it addressed only "the narrow question ... whether a party may receive or keep the proceeds of a fee award when she has neither agreed to pay her attorneys nor obtained from them a waiver of payment," id. at 580-81, 110 Cal.Rptr.2d 809, 28 P.3d 860, and ultimately explained:
 [T]he [Supreme Court's] analysis of 42[U.S.C. §] 1988 is not incompatible with ... ruling that [the lawyers in this case] are entitled to the proceeds of the fee award that plaintiff concedes she authorized [them] to seek. As the Ninth Circuit Court of Appeals explained in Virani, Evans stands for the proposition that, under 42 [U.S.C. §] 1988, only a plaintiff has power to demand a defendant pay the fees of the plaintiff's attorney, and "the defendant's liability will only arise if that power is exercised." But once the client's right to demand attorney fees is exercised, the attorney's right to receive them "comes into being." Accordingly, and as pertinent for our purposes, "the plaintiff has no power to confer the fee upon himself."
 Id. at 582, 110 Cal.Rptr.2d 809, 28 P.3d 860 (citations omitted) (emphases added). Thus, rather than undermine our conclusion that § 1021.5 confers no legally enforceable interest on the attorneys themselves, Flannery clearly recognized that such an interest can arise only after the client authorizes his or her attorneys to seek fees on his or her behalf. To reiterate, it is not even clear that Florida Counsel represented a client in the Churchill litigation.
 
 
 [13]
 Consequently, we need not address GE's conditional cross-appeal with respect to this issue