Filed 3/12/13  Zhang v. Xia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| YIZHOU ZHANG,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZHAOYUN XIA,<br><br>    Defendant and Appellant. | H037605<br>(Santa Clara County<br>Super. Ct. No. 1-01-FL102042) |

Zhaoyun Xia, who is now representing herself, appeals from the post-judgment order, entered on September 19, 2011, denying her request for an order setting aside the marital judgment filed June 19, 2002 and the incorporated, attached marital settlement agreement, which set forth their property division and provided no spousal support.  (See Fam. Code, §§ 2107, subd. (d), 2122.)[1]

We affirm the order denying relief.[2]

---

[1]    All further statutory references are to the Family Code unless otherwise stated.

[2]    We decline the parties' separate requests, raised in their briefs and not by motion, that we strike the opposing party's brief, in whole or part.  (See Cal. Rules of Court, rule 8.204(a) and (e), see also Cal. Rules of Court, rule 8.54.)  All further references to a specific rule are to a rule of the California Rules of Court.

1

# I

## *Procedural History*

Appellant Xia sought a set aside order on grounds of fraud, misrepresentation, and failure to exchange preliminary declarations of disclosure prior to execution of the agreement. An order to show cause (OSC) was filed March 17, 2009.

A supporting statement of facts, which was attached to her application for an OSC and was *not* made under penalty of perjury, stated the following. Xia and her former husband Yizhou Zhang first signed a marital settlement agreement ("MSA I") on September 4, 2001. They signed a Preliminary Declaration of Disclosure on September 7, 2001. They entered a second marital agreement ("MSA II"), which was also dated September 4, 2001 but was actually executed on April 4, 2002. The judgment was entered on June 19, 2002. On September 27, 2002, the parties entered into a further agreement providing that their "divorce is final and all financial settlements are final" and the marital settlement agreement "attached with their divorce papers is fair, final and complete" and neither could make a claim contrary to their marital settlement agreement.

According to Xia's statement, both Zhang and Xia had sent money to China in 1997 to allow their respective parents to purchase real estate on behalf of each of them but Zhang had deceived her by telling Xia that the properties were approximately of equal value. It stated that the condominium purchased in China by her parents was about 800 square feet and worth $40,000 while the townhouse purchased in China by Zhang's parents was 2150 square feet and worth about $200,000.

That statement further indicated that while she knew about both properties at the time they settled, Zhang represented that his mother also invested in the property. "[F]or the sake of getting the matter done [Xia] agreed to language in the [marital settlement agreement] to the effect that 'there is no real estate involved.' " According to the

statement, Xia relied on Zhang's representations that they would "work through this problem later."

Xia's statement disclosed that Xia brought a lawsuit in China to put her "name on the townhouse." According to the statement, in October 2008, during discovery in that lawsuit, her attorney learned the money sent by Zhang to his parents had "paid for 100% of the townhouse."

The statement indicated that at the time she signed MSA I on September 4, 2001 she knew that Zhang had lost his job with Compaq but she did not know that he was receiving compensation for accumulated paid time off (PTO) or had been offered a severance package. In the statement, Xia claimed that she would not have waived her spousal support rights had she known of the severance package and she had been fraudulently induced to waive her spousal support rights while she was unemployed.

In the statement, Xia acknowledged that the Preliminary Declaration was signed on September 7, 2001, three days after executing MSA I. MSA II was executed on April 4, 2002 but dated September 4, 2001. She accused Zhang of backdating MSA II "as a defense" for failing to inform her of his employment "termination benefits."

In her supporting memorandum of points and authorities, Xia argued that the judgment should be set aid because her former husband Zhang committed extrinsic fraud by (1) not informing her that he had used only their community property money to purchase the townhouse in China and had put his mother's name on the title and (2) concealing the PTO compensation earned during marriage and severance pay, which Zhang received from his employer Compaq after its acquisition by Hewlett Packard. Xia asserted that Zhang "attempted to actively conceal" the severance pay by inserting in MSA I and MSA II that "there was no 'significant separate property.' " It was argued that Xia had been fraudulently induced to waive her spousal support rights by Zhang's failure

3

to disclose to her that "he would receive a severance package from Compaq" and "cash for vacation and flexible time off."

Xia further contended that section 2107, subdivision (d), required the judgment and MSA II to be set aside because Zhang did not provide Xia with his Declaration of Disclosure until after the parties had signed MSA I on September 4, 2001.[3]

Xia maintained in the memorandum that the set aside application was not time barred under section 2122, subdivision (a). She indicated that she first learned in October 2008 that Zhang's parents had not contributed to the purchase price of the townhouse in China and Zhang "had paid 100% of the purchase price." It was argued that since Xia "still does not have the information regarding the Compaq severance package and flexible time off," "the statute of limitations ha[d] not yet started to run" as to the fraud claims concerning those items.

The matter was heard on August 17, 2011 before Judge Mary Ann Grilli. Both appellant Xia and respondent Zhang testified.

Following the hearing, the court stated that there was "a total absence of credible evidence before the Court that [Xia] lacked knowledge of the assets and liabilities that she seeks" and the court "believe[d] the testimony and the documentation submitted by

---

[3]     Ordinarily, each party must "serve on the other party a preliminary declaration of disclosure, executed under penalty of perjury on a form prescribed by the Judicial Council" after or concurrently with service of the petition for dissolution of marriage. (§ 2104, subd. (a); see Stats. 2012, ch. 107, § 1 [a preliminary disclosure must now be served within 60 days of filing the petition for dissolution].) Ordinarily, "before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support . . . each party . . . shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury on a form prescribed by the Judicial Council, unless the parties mutually waive the final declaration of disclosure." (§ 2105, subd. (a).) Except as otherwise provided, "if a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter [§ 2100 et seq.], the court shall set aside the judgment." (§ 2107, subd. (d).)

4

[Zhang] that both parties knew of the payments to their respective parents . . . ." Xia had also failed to prove to the court that she was unaware of the reallocation of the capital loss carry over in the MSA II. The court concluded that any set aside was barred because the application was untimely and Xia had failed to demonstrate that she would benefit. It denied the motion and ordered Zhang's counsel to prepare a proposed order reflecting the court's decision.

The court's formal findings and order were filed September 19, 2011.

During October 2011, Xia filed a motion for reconsideration and a separate motion for a new trial. Both motions requested attorney's fees and costs.

By notice filed on November 14, 2011, Xia appealed from the court's September 2011 order denying her set aside motion.

Following a hearing and by order filed on December 21, 2011, the court denied Xia's motion for reconsideration and motion for a new trial.

II

*Principles of Appellate Review*

An order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " '. . . All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Ibid.*; see Cal. Const. art. VI, § 13.) An appellant has the burden of establishing that the lower court erred or abused its discretion. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at pp. 564, 566.) An appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Rule 8.204(a)(1)(C).) An appellant must meet the burden of providing an adequate record (*In re Kathy P.* (1979) 25 Cal.3d 91, 102) and, in

5

the absence of an adequate record to assess error, an appellate claim will be resolved against an appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.)

It is not the role of appellate courts to construct a legal argument for an appellant. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793; see rule 8.204(a)(1)(B) [each brief must "support each point by argument and, if possible, by citation of authority"].) This is consistent with the basic rule of appellate review that "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Our review is also circumscribed by the general rule that a reviewing court is limited to the record before the lower court making the decision being reviewed. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . .' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

On appeal, appellant makes multiple assertions that the court erred without any supporting legal reasoning. We treat appellant's assertions of error, either express or implied, not supported by legal argument as waived. Mere statements of fact without legal argument are unavailing. We pass without consideration the miscellaneous factual matters raised in appellant's briefs, including those factual matters raised under separate headings, that are not disclosed by the appellate record, were not in evidence before the

6

superior court at the time of the ruling being reviewed, or are unaccompanied by legal argument to support a claim of error. We do not consider new information or facts that were not presented to the court in the proceedings being reviewed.

## III

### *Motion to Set Aside Judgment and the MSA II*

A. *Statutory Authority to Set Aside Judgment After Six Months*

"In proceedings for dissolution of marriage . . . , the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter [§ 2120 et seq.]." (§ 2121, subd. (a).)

Section 2122 specifies the exclusive statutory grounds for setting aside a judgment pursuant to section 2120 et seq. and sets time limits for seeking such statutory relief. The grounds include "[a]ctual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding." (§ 2122, subd. (a).) Other set aside grounds include perjury, duress, mental incapacity, a mistake of law or fact as to stipulated or uncontested judgments, and "[f]ailure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100)." (§ 2122, subds. (b)-(f).) The only grounds raised below by appellant Xia were fraud and failure to comply with disclosure requirements. The court found that the latter claim was untimely and appellant raises no claim on appeal that this determination was erroneous.[4]

---

[4] "An action or motion based on failure to comply with the disclosure requirements shall be brought within *one year* after the date on which the complaining party either discovered, or should have discovered, the failure to comply." (§ 2122, subd. (f), italics added, see *ante*, fn. 3.)

7

Section 2125 provides: "When ruling on an action or motion to set aside a judgment, the court shall set aside only those provisions materially affected by the circumstances leading to the court's decision to grant relief. However, the court has discretion to set aside the entire judgment, if necessary, for equitable considerations." A court has no power to set aside the judgment "simply because the court finds that it was inequitable when made" or "simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate." (§ 2123.)

B. *Standard of Review*

This court reviews a court's ruling on a motion for relief pursuant to section 2120 et seq. for abuse of discretion. (See *Brewer v. Federici* (2001) 93 Cal.App.4th 1334, 1346.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fns. omitted.)

C. *Scope of Review*

The scope of appeal is limited by statute. Code of Civil Procedure section 906 provides in pertinent part: "Upon an appeal pursuant to Section 904.1 . . . , the reviewing court may review the . . . decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial . . . ."

Appellant Xia sought only to set aside the judgment and the incorporated marital settlement agreement on specific statutory grounds. She was not seeking statutory relief

8

for an omitted community asset.[5]  (See § 2556; see also *In re Marriage of Thorne and Raccina* (2012) 203 Cal.App.4th 492, 500-501.)  She was not requesting modification of a spousal support order based on changed circumstances.[6]  (See § 3651, subd. (a).)  The hearing on the set aside motion was not a trial to adjudicate property division or spousal support in a dissolution proceeding.  Thus, her claims that the superior court failed to divide certain assets or award support are not within the scope of this appeal.

Specifically, insofar as appellant is now asserting that the PTO compensation was a community asset that the MSA II failed to divide or the court erred in not dividing PTO, capital loss carry over, and ChangTong LLC (a company never mentioned in the set aside motion or at the August 17, 2011 hearing) pursuant to section 1101, subdivision (h),[7] those claims are beyond the scope of our review of the court's September 19, 2011 order.  Appellant's current contention that the Chinese court erred in not awarding her at least a one-quarter interest in the Chinese townhouse under Chinese law is also beyond the purview of this appeal.

---

[5]     We note that the MSA II provided: "Each [party] hereby transfers and quit claims to the other any and all interest in any property in the possession of the other, and agrees that whatever property the other may possess is now the sole and separate property of the other."

[6]     Even if a spousal support order is modifiable, a court has no authority to modify it without a showing of changed circumstances.  (See *Marriage of West* (2007) 152 Cal.App.4th 240, 246; *Marriage of McCann* (1996) 41 Cal.App.4th 978, 982-983.)  In this case, however, the judgment incorporated the MSA II's spousal support provisions that provided for no spousal support and made clear that "[n]o court shall have jurisdiction to award spousal support at any time regardless of any circumstances that may arise."  "An order for spousal support may not be modified or terminated to the extent that a written agreement . . . specifically provides that the spousal support is not subject to modification or termination."  (§ 3651, subd. (d).)

[7]     Section 1101, subdivision (h), states:  "Remedies for the breach of the fiduciary duty by one spouse, as set forth in Sections 721 and 1100, when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty."

9

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal.  A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit [a party] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.  [Citation.]"  (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241.)  This rule is "stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial.  (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340-341.)"  (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780.)

Appellant Xia now seems to be arguing that she was entitled to $130,000 from Zhang to compensate for a stock loss during their marriage under an agreement they had signed during their marriage but Zhang committed misconduct by "fraudulently removing the agreement before separation" on July 27, 2001.  This was not one of the fraud grounds asserted in her moving papers or ruled upon by the court.  This theory cannot be the basis for overturning the court's denial of her set aside motion.

Although perjury was an available ground for seeking to set aside a judgment under section 2122, appellant did not advance any perjury theory below to justify set aside.  She now contends that the trial court erred by not setting the judgment aside based on perjury (§ 2122, subd. (b)) and by not making findings regarding perjury.[8]  In

---

[8]    Appellant Xia argues that respondent Zhang committed perjury with respect to the Chinese townhouse in his September 7, 2001 description of assets and in MSA II in that those documents state: "There is no real estate involved in this divorce."  She also contends that Zhang committed perjury on his September 7, 2001 income and expense declaration when he stated regarding "net monthly disposable income":  "Just Laid Off Last Week, Income will be Zero."  We observe that, based upon the court's factual findings, any perjury ground for set aside was time barred.  (§ 2122, subd. (b) ["An action or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury"].)

reviewing the court's order refusing to set aside the judgment and MSA II, we consider only those theories actually presented to the trial court for decision.

D. *Substantiality of the Evidence*

Well-settled principles govern our review of the court's findings of fact, whether express or implied. "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.)" (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)

"When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Crawford v. Southern Pac. Co.* (1935) 3 Cal.2d 427, 429.) "The fact that it is possible to draw some inference other than that drawn by the trier of fact is of no consequence. [Citation.]" (*Jessup Farms v. Baldwin*, *supra*, 33 Cal.3d at p. 660.) It is not the function of an appellate court to "reweigh conflicting evidence and redetermine findings." (*Sanchez v. Sanchez* (1961) 55 Cal.2d 118, 126.)

"All issues of credibility are likewise within the province of the trier of fact. (*Estate of Teel* (1944) 25 Cal.2d 520, 526.)" (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925.) The trier of fact is the sole judge of the credibility and weight of the evidence. (See *Estate of Teel* (1945) 25 Cal.2d 520, 526.) The trier of fact may disbelieve and reject the uncontradicted testimony of a witness. (See *Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660.) "Of course, all of the evidence must be examined [on appeal], but it is not weighed." (*Estate of Teel*, *supra*, 25 Cal.2d at p. 527.) Ordinarily, "[a]ll of the evidence most favorable to the respondent must be accepted as true, and that

11

unfavorable discarded as not having sufficient verity, to be accepted by the trier of fact." (*Ibid.*)

"To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent *without resorting to inferences or deductions*. [Citations.]" (*People v. Huston* (1943) 21 Cal.2d 690, 693, disapproved on other grounds in *People v. Burton* (1961) 55 Cal.2d 328, 352, italics added.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*Ibid.*)

As the moving party, appellant Xia had the burden of proof and the initial burden of producing sufficient evidence to justify setting aside the judgment. (See Evid. Code, §§ 110, 115, 500, 550.) The court impliedly found that she had not met her evidentiary burdens. It expressly found that appellant Xia was not credible with respect to her claims. Zhang's testimony, which was believed by the court, was not physically impossible or inherently false and, consequently, we have no authority to reject it.[9] An appeal is not a second chance to try a case.

---

[9] Insofar as appellant is suggesting that respondent Zhang lied to the court below, we are aware that perjury "undermines the search for truth and fairness by creating a false picture of the evidence before the trier of fact." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 9.) But, on appeal, a reviewing court has no authority to reweigh the evidence or reassess a witness's credibility. (See *Crawford v. Southern Pacific Co.*, *supra*, 3 Cal.2d at p. 429; *Hansen v. Bear Film Co.* (1946) 28 Cal.2d 154, 184 ; see also *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358.) Even equitable relief in the trial court is generally unavailable to a party who had notice and opportunity to present a case to the trial court and to protect against any intrinsic fraud attempted by the party's adversary. (See *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 472.) A party must be prepared to meet and expose perjury when a matter is being tried. (See *Cedars-Sinai Medical Center v. Superior Court*, *supra*, 18 Cal.4th at p. 11.)

12

Zhang, who was believed by the court as trier of fact, testified to, or presented evidence, of the following. While the parties were married, Xia suggested sending money to his parents in China so they could buy a bigger house. In about 1997, with Xia's full awareness, he sent $25,000 from their joint account to his parents. Xia also sent $25,000 to her parents. His parents did buy a bigger house in China but they saved the $25,000 in the bank for when Zhang and Xia might need it.[10] Zhang's name was not originally on the title but his name was later added as a co-owner for tax purposes. The money sent to Xia's parents was used to purchase a condominium in China; the names of Xia and her sister were on the title as co-owners.

In 2000, Zhang and Xia visited China and stayed in his parents' townhouse for more than a week. During that visit, they also saw the condominium that had been purchased.

The parties separated on July 27, 2001, following a domestic violence incident in which Xia attacked Zhang and he called 911. At the time of separation in July 2001, Zhang was employed by Compaq. During July and August, Zhang and Xia had extensive, detailed discussions regarding the division of property. They agreed that there would be no spousal support.

On August 27, 2001, Zhang was notified that Compaq had laid him off. Compaq continued to pay his salary for an additional nine weeks past his last day of work and this extended pay ended during November 2001. As soon as he was laid off or within a couple days, Zhang informed Xia that he had been laid off and he would receive nine weeks of pay and compensation for unused vacation or PTO. The compensation for

---

[10]     Zhang's declaration in support and opposition to motions for summary judgment, dated February 2, 2010, appears to have been admitted into evidence at the August 17, 2011 hearing. Appellant testified at the hearing that she first learned that Zhang was claiming that the $25,000 had not been used to purchase a condo in China as their community property when she read Zhang's declaration in February or March 2010.

unused vacation or PTO was an insignificant amount because he had already used most of his time off.

The fact of Zhang's layoff did not change their previous agreement with regard to spousal support. Around September 4, 2001, Xia was unemployed and receiving unemployment benefits. She had a "lot of liquid assets" and her intention was to retrain. Xia had always earned more than Zhang throughout their employment history.

After months of discussion and "a lot of back and forth negotiation" between Zhang and Xia, who were then acting without counsel, and changes to a draft agreement, the parties entered a marital settlement agreement (the MSA I), which was dated and notarized on September 4, 2001. The declarations of disclosure were signed on September 7, 2001 because they were under the impression that they needed to be signed before the County Clerk. They submitted the documents to the County Clerk.

They were eventually told that there were problems with their paperwork. They did not know whether the paperwork would be returned and decided "to sign a new M.S.A. [marital settlement agreement] to continue the divorce process." The parties engaged in further negotiations. In their negotiations, Zhang and Xia agreed that they had sent equal amounts of money to China from their account and the money would be divided like any other bank account.

In late 2001, Zhang was hired by Teledex. Between September 2001 and April 2002, when they signed the MSA II, the parties had many discussions, more than 10. He attended four marriage counseling sessions to assist Xia in her defense of the criminal prosecution arising from the domestic violence incident. Zhang took Xia to the emergency room after she twisted an ankle and then he took her home and cooked for her for a couple of days. Sometime during their many interactions, Zhang informed Xia that he had found a job and was working at Teledex. He did not tell her that he was launching a start-up company in China. He never started a company in China and does not have a

14

company in China.  He had never heard of "A-I-P-U-F-E-N-G Information Technology, limited corporation."

On April 4, 2002, Zhang and Xia entered a second marital settlement agreement ("MSA II"), which superseded the MSA I.  Zhang backdated the agreement to September 4, 2001 so that the marital dissolution proceedings that were already started could continue and the six-month waiting period would not start over from April 4, 2002.  The MSA II's provision stating that there is "no significant separate property" was boilerplate language taken from other "divorce documents."

The MSA II modified the allocation of a $130,000 stock loss for tax purposes from the previous allocation in the MSA I.  It gave Zhang the bulk of the "Capital Loss Carry Over for future tax years," about "110k."[11]  This change was made because Xia indicated that the stock loss was unimportant to her.

In a supplemental agreement, also executed on April 4, 2002, Zhang agreed to pay Xia over $8,000 for various items and $10,000 for an undisclosed reason, a total of over $18,000.  The agreement provided for $5,000 of the $10,000 to be paid "upon the completion of the divorce" and acknowledged Xia's receipt of payment for the remainder.  Zhang paid Xia with a check for over $13,000 when they signed the agreement.

Appellant Xia received over $45,000 more than respondent Zhang in the division of assets.

The "divorce" was final in June 2002.  In an email dated August 10, 2002 and received by Zhang, Xia told Zhang that she had consulted an attorney who could help her reopen the divorce case based on, among other alleged wrongs, "hiding of your layoff

---

[11]     The MSA II provided:  "Total Capital Loss Carry over from tax year 2000 is over $130,000.00, of that [Xia] will carry $17,900.00 and [Zhang] will carry the remaining balance into their future respective separated individual tax returns."

15

package and real employment facts." It warned that "[t]his is your last chance to return $5000 and let everything go away."

Zhang paid $5,000 to Xia in September 2002 and they signed a notarized agreement, dated September 27, 2002, reflecting that the asset division had been completed. This agreement stated they agreed that "the divorce is final and all the financial settlements are final," the MSA II was "fair, final, and complete," and any further contact of Zhang by Xia would be treated as harassment.

Zhang remarried in 2004. He obtained a restraining order against Xia in December 2005.

In 2006, Xia filed a civil complaint in China that claimed that a property, registered under Zhang's and his mother's names, was purchased during Xia's marriage to Zhang and Xia was entitled to one quarter interest in the property. A Chinese civil judgment denied relief. A Chinese appellate decision upheld the denial of relief. The decision stated: "Although the appellant [Xia] believes that the purchase of the real estate property in Changshu was entirely funded by [Zhang and Xia], she failed to produce any evidence to support that claim."

Xia testified that she was laid off from Cisco Systems in 2001 and she had received several weeks of additional pay after her employment terminated. Xia admitted that, at the time she signed the marital settlement agreement on April 4, 2002, she knew that Zhang had sent money to his parents and she had also sent money to her family in China. As of April 4, 2002, it was appellant's understanding that the money Zhang had sent to China had been invested in a Chinese townhouse and the money she had sent to China had been invested in a Chinese condominium.

The MSA II stated the following regarding the division of assets awarded to Zhang and to Xia: "Assets in China, [parties] respect and recognize that the Chinese investment is about the same amount for [each of them]. They will belong to their

16

respective owner." Xia acknowledged that she had read those provisions before signing the agreement on April 4, 2002. She understood at that time that there was real estate in China even though the agreement stated that there was "no real estate involved in this divorce."

Appellant further admitted that in 2005, based on a letter from Fidelity Investment responding to her request, she was aware that Zhang had written a check for $25,000 from their joint account. She acknowledged that in 2006, she filed a complaint against Zhang in China requesting a Chinese court to give her an interest in the townhouse in China because the property was allegedly community property. She claimed that she had never denied that the Chinese condominium held in her and her sister's names constituted community property and "if [Zhang] wants he can ask for it."

E. *No Abuse of Discretion in Denying Motion*

1. *Set Aside Motion Time Barred*

Appellant's arguments that her fraud claims were not time barred ask us to improperly reevaluate her credibility, reweigh the evidence, and consider facts outside the appellate record, which we have no authority to do.

Substantial evidence supports the following findings. Zhang sent $25,000 to his parents during the parties' marriage. Xia knew before signing the MSA II that Zhang had sent money to his parents in China and it was her understanding that his parents had purchased a townhouse in China with that money. She knew in 2005, at the latest, that Zhang had written a $25,000 check from their joint account, and she knew that Zhang and his mother were registered owners of a property in China at the time she filed her civil complaint in China in 2006, at the latest. Substantial evidence supports a finding that appellant Xia knew about the severance pay and the PTO compensation received by Zhang as a result of being laid off from Compaq and his subsequent new job on

17

August 10, 2002, the date of her email to Zhang, at the latest. She presented no evidence that Zhang had given his parents more than $25,000 from their joint account.

Consequently, when she filed her set aside motion in 2009, her fraudulent concealment and fraudulent inducement claims with respect to the MSA II were time barred under section 2122, subdivision (a). It provides that a motion "based on fraud shall be brought *within one year* after the date on which the complaining party either did discover, or should have discovered, the [alleged] fraud." (Italics added.)

2. *No Material Benefit*

Before granting relief from a judgment pursuant to section 2120 et seq., a court must "find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b).)

The court found that appellant Xia failed to meet her burden of proving this prerequisite to relief. It formally found that she had "received clearly significantly more than one-half of the community assets of the parties." (See § 2550 [general rule of equal division].)

In arguing that this finding was error, appellant improperly resorts to facts outside the record on appeal, including the supposed value of various assets, the tax benefit from claiming the stock losses, and spousal support. At the hearing, the court estimated that the MSA II provided for an unequal division of community property in favor of appellant by about $45,000. This figure appears to be approximately correct as to their many accounts and their two vehicles; their other property was not assigned a value in the agreement. In her brief, she acknowledged that the MSA II awarded her more, albeit she acknowledges "only $20,000 more assets."

Appellant fails to show, by reference to testimony and the documents admitted into evidence at the August 17, 2011 hearing, she would materially benefit, either with

18

regard to the division of property or spousal support, if the court set aside the judgment either in part or whole. Substantial evidence supports the court's conclusion that she would not.

### 3. *The MSA II not Procured by Fraud*

None of appellant's claims of fraud are well taken. She is in essence asking us to improperly reevaluate her credibility, reweigh the evidence, and take into account new facts not established by the evidence at the hearing on August 17, 2011.

### a. *Chinese Townhouse*

Specifically with respect to the Chinese townhouse, appellant Xia argues that the court relied on the Chinese court's judgment and improperly applied the doctrine of res judicata. The record does not substantiate that claim.

The lower court found that, as of April 4, 2002, when the parties executed the MSA II, Xia was fully aware of all material facts concerning the investments and assets of the parties held in China and these investments and assets were fully addressed and divided in that agreement. Reviewing the evidence under the deferential substantial evidence standard, we must conclude that substantial evidence supports that factual determination based upon respondent Zhang's testimony. The court, as the trier of fact, rejected Xia's contrary testimony and we are bound by the superior court's factual determinations since they are supported by substantial evidence.

### b. *Division of Other Assets and Allocation of "Capital Loss Carry Over"*

The superior court found respondent Zhang was credible in his testimony and "he did timely disclose all material facts regarding each Individual asset of the parties prior to the signing of the Marital Settlement Agreement of April 4, 2002, and the entry of the Judgment of Dissolution, including his severance pay from Compaq computers, the paid time off from Compaq computers, his new employment with Teledex, the stock loss carry forward, and the assets and investments held in China during the marriage by the parties."

19

Although the PTO compensation from Compaq was not separately listed on the MSA II and the agreement stated that there was "no significant separate property," the court clearly found based upon respondent Zhang's testimony, which it found credible, that appellant knew about the severance pay and PTO compensation Zhang had received from Compaq and respondent's employment at Teledex when she signed the agreement because Zhang had orally told her of these facts beforehand. In addition, the court believed Zhang's testimony that the division of the "capital loss carry over" for tax purposes was changed from the MSA I to the MSA II because appellant did not care about it and Xia did not present credible evidence that the parties did not negotiate the change or that she was unaware of the change. As repeatedly emphasized, it is not the function of this court to reassess credibility or reweigh the evidence.

Further, as previously indicated, "[a]s an appellate court, we may not consider assertions of fact that are not supported by the record. [Citation.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 845, fn. 6.) Consequently, we must disregard her assertions in her opening brief that Zhang "actually owns a Chinese company called AiPuFeng Information Technology LLC" and that Zhang concealed "ChangTong LLC" since those statements are not supported by any evidence before the superior court. There was *no* evidence adduced at the August 17, 2011 hearing concerning a "ChangTong LLC." The superior court impliedly believed Zhang's testimony that he had not started, and did not own, a company in China and he had never heard of "A-I-P-U-F-E-N-G Information Technology, limited corporation."

Appellant does not argue and has not shown that the court's findings are unsupported by substantial evidence.

c. *Spousal Support*

The court impliedly rejected appellant Xia's claim that she was fraudulently induced to waive her spousal support rights by Zhang's failure to disclose material facts

20

before they signed the MSA II when it denied her set aside motion on all grounds. The court found there was "a total absence of credible evidence that [respondent Zhang] committed fraud or defrauded [appellant Xia] in any way regarding any of the assets of the marriage or defrauded her in any way which prevented [her] from fully participating in the dissolution proceedings" and respondent Zhang "committed no fraud or duress on [appellant Xia] related to the execution of the Marital Settlement Agreement of April 4, 2002, or the Judgment of Dissolution entered on June 19, 2002." Thus, the court impliedly believed Zhang's testimony indicating that, prior to April 4, 2002, the date the MSA II was signed by the parties, appellant Xia had been told by respondent Zhang that he received an additional nine weeks of pay and compensation for unused vacation or PTO as a result of losing his job at Compaq and that he had a new job working at Teledex.

d. *No Abuse of Discretion Shown*

When parties in a dissolution proceeding agree to a property division, "no law requires them to divide the property equally, and the court does not scrutinize the [marital settlement agreement] to ensure that it sets out an equal division. [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 666.) A party to a marital settlement agreement may waive the right to receive spousal support. (*In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 130; see §§ 4335-4337; see also *In re Marriage of Hawkins* (1975) 48 Cal.App.3d 208, 213 ["The parties to a property settlement are entitled to relinquish the possibility of a potentially more beneficial support order in exchange for certainty of their rights and obligations"].) Even though a court might require reimbursement to the community for a party's use of community property for his separate benefit, the parties may agree otherwise. (See § 2550.)

21

Based upon the court's assessment of credibility and the evidence to which it gave credence, the court did not abuse its discretion by concluding the judgment and the MSA II were not procured by Zhang's fraud.

IV

*Motion for Reconsideration and Motion for a New Trial*

During October 2011, after the September 2001 order denying her set aside motion, appellant, in pro. per., filed a motion for reconsideration and a motion for a new trial, which both included requests for attorney fees and costs. By order filed on December 21, 2011, the court denied both those motions.

The trial court denied the motion for reconsideration, filed on October 7, 2011, on two grounds: (1) it was untimely under Code of Civil Procedure section 1008, subdivision (a),[12] and (2) it did not present sufficient evidence of new facts or law. The trial court denied the motion for a new trial, filed on October 13, 2011, on two grounds: (1) it was untimely under Code of Civil Procedure section 659, subdivision (2),[13] and

___

[12]     Code of Civil Procedure section 1008, subdivision (a), states in part: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, *within 10 days after service upon the party of written notice of entry of the order* and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." (Italics added.)

[13]     Code of Civil Procedure section 659, subdivision (a)(2), requires a motion for a new trial to be filed and served *"[w]ithin 15 days of* the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or *service upon him by any party of written notice of entry of judgment*, or within 180 days after the entry of judgment, whichever is earliest; provided, that upon the filing of the first notice of intention to move for a new trial by a party, each other party shall have 15 days after the service of that notice upon him or her to file and serve a notice of intention to move for a new trial." (Italics added.) This time cannot "be extended by order or stipulation or by those provisions of Section 1013 of this code which extend the time for exercising a right or doing an act where service is by mail." (Code Civ. Proc., § 659, subd. (b).)

22

(2) it did not present sufficient evidence in support of any of the statutory grounds for a new trial.

Appellant Xia now asserts that her motions were timely filed since, on September 29, 2001, Zhang's attorney "served" a copy of the September 2001 order denying her set aside motion on her attorney by fax. She states that Zhang is "responsible for failing to serve proof of service and misleading [her] on the service date."

We assume that we have jurisdiction to review the December 2011 order in this appeal[14] but we lack a complete record of those proceedings. Appellant did not include respondent's opposing papers in her appendix but we do discern from her reply, which is included in appellant's appendix, that respondent asserted that appellant had been served by mail on September 21, 2001. "We cannot presume error from an incomplete record. (*In re Kathy P.* (1979) 25 Cal.3d 91, 102.)" (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.)

---

[14] By December 2011, a majority of California courts had concluded that an order denying a motion for reconsideration was an unappealable order. (See *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 968-969.) Appellant did not appeal from the denial of her motion for reconsideration. The law changed, effective January 1, 2012, to provide that "[a]n order denying a motion for reconsideration . . . is not separately appealable" but the denial could be reviewed on appeal from the original order if appealable. (Code Civ. Proc., § 1008, subd. (g); Stats. 2011, ch. 78, § 1, p. 1910; see Cal. Const., art. IV, § 8, subd. (c)(1), Gov. Code, § 9600, subd. (a).) This amendment would appear to operate prospectively (see Code Civ. Proc., § 3, *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209) and a procedural law concerning the conduct of appeals is being applied "prospectively" when applied to a pending appeal. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 280; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 289.) "[I]t has long been settled that an order *denying* a motion for new trial is not independently appealable and may be reviewed only on appeal from the underlying judgment. (*Hamasaki v. Flotho*, *supra*, 39 Cal.2d at p. 608.)" (*Walker v. Los Angeles County Metropolitan Transp. Authority* (2005) 35 Cal.4th 15, 19; see *Walker v. Los Angeles County Metropolitan Transp. Authority*, *supra*, 35 Cal. 4th at p. 18; Code Civ. Proc., § 906.)

Further, appellant has failed to affirmatively show by reference to the record and citation to applicable legal authority that her motions were timely filed. (*Maria P. v. Riles*, *supra*, 43 Cal.3d at p. 1295, *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) Moreover, since she is attacking only one of two independent grounds for denying each motion on appeal, she has not shown that the alleged procedural error, even if correct, requires reversal. (See Cal. Const., art. VI, § 13.)

Even if appellant's intention was to attack the substantive grounds of the December 2011 order denying her motions for reconsideration and new trial, she failed to raise any claims of error with sufficient clarity in her opening brief to allow us to address them and we deem them waived. (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793; see rule 8.204(a)(1)(B) and (a)(1)(C).) Insofar as appellant might be attempting to assert for the first time in her reply brief that there was sufficient new evidence to support her motions for reconsideration and a new trial, those claims of error are deemed waived. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295-296, fn. 11.)

*V*

*Request for Attorney's Fees and Costs*

Insofar as we can discern from the sole citation to the appellate record contained in her argument regarding attorney's fees and costs, appellant Xia is attacking the court's failure to award her attorney's fees and costs in ruling on her motion for a new trial. If she was attempting to raise some other alleged errors, those claims are deemed waived. It is not our role in this case to search the record for error. (See *Green v. City of Los Angeles* (1974) 40 Cal.App.3d 819, 835; *In re Randall's Estate* (1924) 194 Cal. 725, 728-729; see also rule 8.204(a)(1)(C).)

Attendant to her motion for a new trial, appellant requested the court to "award all attorney fees, costs and expenses incurred in this case per [F]amily [C]ode section 1101

24

(g)(h) and 2030."[15]  She now appears to claim, without legal analysis, that the court erred

in failing to make an award pursuant to those statutory provisions when it denied her new

[15]     Family Code section 1101 states in pertinent part:  "(g) Remedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, but not be limited to, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty *plus attorney's fees and court costs*.  The value of the asset shall be determined to be its highest value at the date of the breach of the fiduciary duty, the date of the sale or disposition of the asset, or the date of the award by the court.  [¶]  (h) Remedies for the breach of the fiduciary duty by one spouse, as set forth in Sections 721 and 1100, when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty."  (Italics added.)

Under section 2030, a court is authorized to award "whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding" for dissolution of marriage.  (§ 2030, subd. (a)(1).)  "A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."  (§ 2030, subd. (a)(2).)  Section 2030, subdivision (c), provides; "The court shall augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto, including after any appeal has been concluded."  "The court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties."  (§ 2032, subd. (a).)  "In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320."  (§ 2032, subd. (b).)  "Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."  (*Ibid*.)  "An award of fees and costs in a dissolution or related family law proceeding is a matter left to the trial court's sound discretion, and absent 'a clear showing of abuse, its determination will not be disturbed on appeal.'  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768–769.)"  (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054.)

trial motion.  Therefore, her contention is waived.  (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793; see rule 8.204(a)(1)(B).)

Since appellant Xia failed to establish that the court erred in denying her motion for a new trial as untimely, she has not shown that her request for attorney's fees and costs was properly before the trial court.  She has not affirmatively demonstrated on the record that the court erred in not awarding attorney's fees and costs as requested.  (See *Maria P. v. Riles*, *supra*, 43 Cal.3d at p. 1295, *In re Kathy P.*, *supra*, 25 Cal.3d at p. 102, *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

*VI*

*Other Appellate Claims*

A.  *December 2010 Discovery Order*

By order dated December 8, 2010, the court ordered appellant Xia to appear for deposition on January 10, 2010.  In that same order, the court denied her request for respondent Zhang to pay for her airplane ticket to come to California for deposition.  Citing Code of Civil Procedure section 2025.260, subdivision (c), appellant argues that the trial court erred in denying that request.  We assume for purposes of this appeal that these orders are reviewable.  (Code Civ. Proc.,§§ 904.1, subd. (a)(2), 906.)

Under Code of Civil Procedure section 2025.260, subdivision (a), "[a] party desiring to take the deposition of a natural person who is a party to the action . . . may make a motion for an order that the deponent attend for deposition at a place that is more distant than that permitted under Section 2025.250."  Subdivision (c) of that section provides: "The order *may* be conditioned on the advancement by the moving party of the reasonable expenses and costs to the deponent for travel to the place of deposition." (Italics added.)

In her brief, appellant has not provided any legal reasoning or citation to authorities suggesting that an order awarding reasonable travel expenses and costs was

26

mandatory under the law or the court abused its discretion in denying appellant Xia's request to have respondent Zhang pay for an airplane ticket. We deem this contention waived. (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793; see rule 8.204(a)(1)(B).)

B. *February 8, 2011 Hearing*

Appellant did not attend the hearing on February 8, 2011, which appears to be a hearing on a motion to compel her deposition and for sanctions for her failure to appear for deposition. The court reset her deposition for a later date and continued the motion. The court found that sanctions were appropriate for appellant Xia's failure to comply with discovery and ordered her to pay respondent Zhang's counsel $2,000 for the fees and costs incurred in the matter.

Appellant Xia now also argues that the trial court erred "in discriminating against pro se litigant by not allowing [her] to attend hearing by phone from China and imposing sanction." Although these orders appear to be reviewable (Code Civ. Proc., § 904.1, subd. (b), 906),[16] appellant fails to cite to any legal authority establishing that she was entitled at the time of February 8, 2011 hearing, under then applicable case law, statute, or state or local court rule, to appear by telephone, apparently from China.[17] Neither has she identified in the appellate record any court order disallowing her from appearing by telephone. Consequently, her claim of judicial error concerning a telephonic appearance

---

[16]    A sanction order of $5000 or less is not an appealable order. (See Code Civ. Proc., § 904.1, subd. (a)(11) and (a)(12).) "Sanction orders or judgments of five thousand dollars ($5,000) or less against a party or an attorney for a party may be reviewed on an appeal by that party after entry of final judgment in the main action, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ." (Code Civ. Proc., § 904.1, subd. (b).)

[17]    Rule 5.9, which generally applies to family law cases and was adopted effective January 1, 2013, will allow a court to "permit a party to appear by telephone at a hearing, conference, or proceeding if the court determines that a telephone appearance is appropriate." Under that rule, "[c]ourts may develop local rules to specify procedures regarding appearances by telephone." (Rule 5.9(d).)

is treated as waived. (See *People v. Stanley*, *supra*, 10 Cal.4th at p. 793; see also rule 8.204(a)(1)(B) and (a)(1)(C).)

She further asserts that the trial court erred by imposing a monetary sanction without an opportunity to be heard, citing Code of Civil Procedure section 2023.030. That section recognizes that a court may, after notice and an opportunity for hearing, "impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (Code Civ. Proc., § 2023.030, subd. (a).) Appellant had an opportunity for hearing but she failed to appear and be heard.

Appellant further claims that imposition of a sanction was error because (1) a medical problem caused her to cancel her deposition and her failure to appear for deposition was not willful and she acted with "substantial justification" as required by Code of Civil Procedure section 2023.030[18] and (2) the sanction imposed "an unreasonable financial burden" on her in violation of section 271.[19] She does not establish by specific references to the appellate record that any of these arguments, and supporting evidence, was actually presented to the trial court. As a general rule, "issues not raised in the trial court cannot be raised for the first time on appeal. [Citations.]" (*Estate of Westerman* (1968) 68 Cal.2d 267, 279.) We conclude that her present

---

[18] Code of Civil Procedure section 2023.030, subdivision (a), states in part: "If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

[19] Section 271, subdivision (a), provides in part: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." A court is prohibited from imposing a sanction pursuant to that section if it is "an unreasonable financial burden on the party against whom the sanction is imposed." (*Ibid.*)

contentions were not preserved for appellate review but were forfeited. (See *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265; cf. *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528-1529.) Even if we were to find these sanction contentions were not forfeited, appellant has not satisfied her burden of affirmatively showing error. (See *Maria P. v. Riles*, *supra*, 43 Cal.3d at p. 1295, *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

C. *Alleged Judicial Bias*

Appellant charges Judge Grilli with judicial bias. Without any citation to legal authority, she requests this court to "remand the case to another unbiased judge with more experience in civil litigation, if this case will be remanded." We decline her request. (See Code Civ. Proc., § 170.1, subd. (c).)

"[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review. (*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795–796; *McEwen v. Occidental Life Ins. Co.* (1916) 172 Cal. 6, 11.)" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112, limited on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151; see *In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 153-154 [legal error in characterizing an appellant's disability allowance "does not itself create the appearance of bias, much less establish bias" against the appellant].) Appellant has not shown by reference to the appellate record that the judge was biased.

DISPOSITION

The September 19, 2011 order denying the motion to set aside the judgment is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.