Filed 7/15/16  Roebel v. Vampola CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNETH ROEBEL et al.,<br><br>    Plaintiffs, Cross-Defendants and Appellants,<br><br>    v.<br><br>JAMES VAMPOLA et al.,<br><br>    Defendants, Cross-Complainants and Respondents, | D067812<br><br><br>(Super. Ct. No. 37-2013-00042247-CL-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Kenneth Roebel and Chayapha Roebel, in pro. per., for Plaintiffs, Cross-Defendants and Appellants.

James Vampola and Jennifer Vampola, in pro. per., for Defendants, Cross-Complainant and Respondents.

This case arises from a dispute between plaintiffs and appellants, Kenneth Roebel and Chayapha Roebel (together Roebel) and their former landlords, defendants, cross-

complainants and respondents James Vampola and Jennifer Vampola and their family trust (together Vampola). At a bench trial on Roebel's allegations of breach of the warranty of habitability and other issues concerning the rental property, the court took testimony from the parties and other witnesses and admitted documentary exhibits. The court issued a final statement of decision and judgment, ruling against Roebel on his complaint and in favor of Vampola on the related cross-complaint, with $3,174.84 in damages awarded.

Representing himself on appeal, Roebel essentially argues that because he presented testimony that conflicted with Vampola's testimony, the trial court should properly have found only that the evidence was sufficient to support relief to him and not to Vampola. He seems to argue that we should retry the case and exonerate him from any responsibility in causing the substandard conditions at the property.

Our rules of review applied to this very limited record lead us to determine that the trial court had a sufficient basis to conclude, from all of the reported testimony, that Roebel had not proved his case that the warranty of habitability was breached or that the lease and related agreements and notices were unreasonable. Vampola showed by a preponderance of the evidence that Roebel did not comply with his property maintenance obligations and caused damage to Vampola. No error has been demonstrated and we affirm the judgment.

# I

## *EXTENT OF RECORD*

For the clerk's transcript, Roebel did not designate any specific documents and therefore the clerk prepared a standard record including only the judgment, the notices of appeal and designations of the record. (Cal. Rules of Court, rule 8.122; all further rule references are to these rules.) Both parties were represented by counsel at trial. The record includes a letter from counsel for Vampola submitting for review a proposed judgment after trial, noting that the final statement of decision had been filed on December 11, 2014. However, our record includes no copy of the statement of decision or any objections and responses to it, although they are referenced in the judgment.

For the reporter's transcript, Roebel designated only the two days of trial, October 20 and 21, 2014. This designation does not include any subsequent oral proceedings on the preparation of the statement of decision. The record includes a duplicate reporter's transcript volume, with two file stamps.

By leave of court, a few trial or deposition marked exhibits were attached to the appellant's opening brief (e.g., 1996-1997 map and engineer's report; a diagram and 2013 photos; 2013 invoices for plumbing services). Of these, only Exhibit No. 227 (photos of the property dated in 2013) appears to have been admitted into evidence at trial. Both parties' briefs discuss numerous other trial exhibits that were evidently admitted, but they have not been transmitted to this court. (Rule 8.224.)

According to testimony at trial, Vampola rented a Fallbrook house (the residence) to Roebel, starting in January 2011. Although we do not have a copy of the lease, the

3

briefs represent that it provided for a rent of $1,695 per month, and Roebel would be responsible for damages caused by his stoppage of waste pipes.

There was another dwelling on the property (referred to as a granny flat or garage apartment), that did not have its own utilities meter. It was already occupied by another tenant, called "Dee," when Roebel arrived. Dee's family included young grandchildren who were there at times.

At trial, the parties disputed when Roebel learned that as the main tenant, he would be paying utility costs for both dwellings on the lot. It is not disputed that Roebel agreed that throughout the tenancy, he would be taking a credit of at least $120 per month for such utility payments, against the lease rental amount due. (Civ. Code, § 1940.9 [requiring landlord to provide separate utility meters for each dwelling unit, or explicitly disclose that condition to the tenant and reach written agreement for another arrangement].)

Beginning in 2011, the property's septic/sewer system backed up numerous times over the next two years. A sewage stoppage and leak occurred under the residence in September 2012. Roebel believed the property was defectively constructed and he was concerned about the odor and the threat to his family's health. He reported the spill to the San Diego County Health Department on September 6, 2012. When Vampola learned about it, he had repairs done and told both tenants not to use disposable "wipes." Roebel said they were not using them at the house, but maybe in the car.

At the beginning of 2012, Roebel had trouble with the stove and furnace, and called county officials for a safety inspection. When Vampola learned about the alleged problem, he replaced the stove, and dealt with the complaints about the furnace.

4

Because of photos he saw on Facebook, Vampola became concerned that Roebel was running a commercial food preparation business out of the residence, which could have explained some of the utility issues and problems. Roebel denied that he or his wife were operating a business at the residence, although they had prospectively formed an LLC and sometimes made food for social occasions.

On September 17, 2012, Vampola posted a 60-day notice to quit at the residence, requiring Roebel to stop illegal activity pertaining to commercial food preparation at the residential property. The parties discussed the problem and eventually, the notice was abandoned. The other renters left the premises by January 2013.

Other sewage spills occurred in April 2013, and the plumber found there were "massive" amounts of wipes in the septic tank. Vampola believed that the source of the stoppages (wipes) was from the Roebel household.

Vampola gave a second 60-day notice to quit to Roebel on April 11, 2013, on the basis that the county was requiring the owner to modify the residence. The parties discussed the matter and Roebel's family stayed in the residence until July 2013, after the school year was over.

II

*LAWSUIT AND TRIAL; STATEMENT OF DECISION AND JUDGMENT*

Roebel filed a complaint in April 2013 alleging various claims of retaliatory eviction and uninhabitable premises. (Civ. Code, § 1942.5 [restricts time within which lessor may recover possession of a dwelling or evict the lessee, etc., where the lessor retaliated against the lessee for exercising rights to seek tenantability of a dwelling;

5

providing for remedies and penalties]; Health & Saf. Code, § 17920.3 [defining substandard building conditions for remedial purposes; e.g. inadequate sanitation].) Vampola filed a cross-complaint in May 2014 for damages and unpaid rents.

At the two-day bench trial, both Roebel and Vampola testified. Roebel called as witnesses a county code compliance officer (Thomas Causay) and a county environmental health specialist (Desirae Hogervorst), to testify about their observations of water and sewage problems when he called them to the residence. Roebel's attorney retained a consulting water damage restoration professional (Paul Sukatski), who had inspected the premises in October 2012 and testified at trial about his observations of sewage residue in the crawl space under the residence. Throughout trial, documentary exhibits were discussed and admitted into evidence.

At the conclusion of trial, the court complimented trial counsel on their presentations and told them they "really put forth the evidence I need to make a decision." After issuing a tentative statement of decision and allowing responses, the court signed a judgment awarding Roebel nothing and awarding Vampola $3,174.84 in damages on the cross-complaint. The judgment states,

> "1. The Plaintiffs did not meet their burden of persuading the Court, by a preponderance of the evidence, that the warranty of habitability was breached. [¶] 2. The agreement regarding utilities was reasonable. [¶] 3. The notices to terminate the lease served by Defendant were not retaliatory. [¶] 4. The Plaintiffs did not comply with their property maintenance obligations. [¶] 5. Defendants are entitled to damages on their cross-complaint."

Roebel appeals.

6

III

*RULES OF REVIEW*

The rules of appellate procedure apply to Roebel and Vampola even though they are representing themselves on appeal.  (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121 (*Leslie*).)  The judgment is presumed to be correct, and any appellant challenging the judgment must make an affirmative showing of error.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

Roebel as an appellant has the burden of providing an adequate record and of showing that error occurred and that it was prejudicial.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)  To meet his burden, Roebel must provide legal argument in support of his claims of error, citations to legal authority, and an adequate record with supporting references to it.  (Rule 8.204(a)(1)(B), (C); *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 & fn. 2; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.)  If he does not do so, we may treat his point as waived or abandoned.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Marriage of Falcone, supra*, at p. 830; *Pringle, supra*, at p. 1003.)

Although we have not been given the opportunity to review the statement of decision as part of the record, it would ordinarily be deemed adequate if it stated the grounds upon which the judgment rests, and it need not specify what particular evidence the trial court relied on in reaching its decision.  (*Muzquiz v. City of Emeryville* (2000) 79

7

Cal.App.4th 1106, 1124-1125.) In our case, the judgment is the equivalent, and it sets forth ultimate findings of fact that impliedly include findings on all intermediate evidentiary facts necessary to sustain them. (See *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599; *Muzquiz, supra*, at p. 1125.)

Even where the trial court's ruling did not expressly decide a particular factual issue, we would imply findings sufficient to support the court's ruling. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.) We presume the record contains evidence to support every finding of fact, and absent a fair summary of the evidence and explanation as to why it is insufficient, we shall not disturb the trial court's factual findings. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

It is basic that an appellate court does not reweigh the evidence or second guess the credibility of a witness. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) In determining whether substantial evidence supports the court's order, we view the evidence in the light most favorable to the order. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)

IV

*ANALYSIS*

Although this record is sparse and the briefing is confusing, we exercise our discretion to determine whether the judgment has the required evidentiary and legal support. As disclosed by the reporter's transcript, the trial court was required to address numerous substantive disputes about alleged breaches of the warranty of habitability and claims of violations of lease provisions on the use of the property. The evidence also

8

addressed the extent to which the parties reached agreement on bearing the costs of utilities for the additional dwelling on the property, and whether retaliatory eviction occurred.

Roebel objects to the judgment by pointing out specific ways in which he claims his renter's rights were denied, in providing him substandard premises that were poorly designed, constructed or maintained. He argues his version of the evidence was more credible on issues such as whether his activities contributed to the sewage problems, and whether and when he agreed to pay for additional utility costs. He also complains that his trial counsel made some mistakes, his wife could not testify due to a missing interpreter, and overall, he is very reasonable and not litigious, as the court suggested.

To the extent that Roebel claims he is entitled to reversal based on insufficiency of the evidence, or because he thinks that Vampola did not tell the truth, he fails to substantiate his position. As a trier of fact, a trial judge is required to reject evidence only " 'when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " [Citations.]' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) Witness credibility is not a matter we may consider on appeal. " '[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518; *In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051-1052 ["[I]t is well established that the trial court

9

weighs the evidence and determines issues of credibility and these determinations and assessments are binding and conclusive on the appellate court."].)

The trial concluded with the judge saying that enough evidence had been produced to allow him to make the required decisions. From the 353-page reporter's transcript, it is evident that the judge examined the merits of the disputes and conscientiously gave each side and their witnesses a chance to be heard. Absent any indication to the contrary, which there is not, we are required to presume the trial court applied the correct legal standards in evaluating the respective showings of the parties. (*Denham*, *supra*, 2 Cal.3d at p. 564; *In re Julian R.* (2009) 47 Cal.4th 487, 498-499 [appellate court presumes the trial court was aware of and followed the applicable law; rule derives in part from the presumption of Evidence Code section 664 that "official duty has been regularly performed"].) We do not now retry the case or reevaluate the exhibits or testimony.

We are mindful that the parties represent themselves on appeal. However, the appearance of a party in propria persona does not provide a basis for preferential consideration. (*Leslie, supra,* 234 Cal.App.3d at p. 121.) To the extent we can discern the specific challenges being made to this judgment, we conclude Roebel has not provided an adequate record nor has he demonstrated there was prejudicial error at trial. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.)

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondents.


$\overline{\text{HUFFMAN, Acting P. J.}}$

WE CONCUR:


$\overline{\text{NARES, J.}}$


$\overline{\text{O'ROURKE, J.}}$

11